**Helen AMES et al.**

v.

**OCEANSIDE WELDING AND TOWING COMPANY, INC., et al.**

**No. 99–300–Appeal.**

Supreme Court of Rhode Island.

March 16, 2001.

Robert M. Sabel, Newport, for Plaintiff.

John F. Kelleher, Amy Vignali Coleman, Providence, Robert H. Gaynor, Boston, Mass., for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

PER CURIAM.

In this case, plaintiff Rachel Abdullah (Abdullah) appeals from a summary judgment entered in the Superior Court in favor of the defendants Rolling Green Associates, Franklin Simon, and Community Planning and Development Associates (collectively "Rolling Green"), dismissing Abdullah's tortious conversion and deceptive trade practice claims arising out of the towing and storage of her automobile. On January 23, 2001, the case came before a single justice of this Court, who directed the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After reviewing the memoranda submitted by the parties and hearing the arguments of counsel, we are of the opinion that cause has not been shown, and we proceed to resolve the appeal at this time.

## I. Facts and Case Travel

Rolling Green owns and operates a 200–unit rental apartment complex, Rolling

Green Village (Village), in Newport, Rhode Island. Abdullah, a resident of the Village for eight years, and other residents routinely parked their vehicles in spaces on a private drive commonly known as Rolling Green Road (Road), which serves as a primary access way for the Village. Rolling Green had a long-standing policy that during times of inclement weather, namely snow, residents were prohibited from parking their vehicles on the Road and, instead, were directed to park their vehicles in the rear parking lots to give plows or other vehicles access to the Village. The policy provided that improperly parked cars would be towed at the owner's expense. Notices of that policy were routinely provided to the individual residents and posted throughout the Village complex. A typical notice provided in part:

> "The snow is on its way. Please remember that the snowplows need to get in here on a regular basis during and after a snowstorm. Please park all vehicles in the rear parking lots provided, because all vehicles parked on the streets will be towed at the owner[']s expense."

On January 7, 1994, a snowstorm, as predicted, swept through the Village. The storm began during the day and lasted well into the evening, but apparently had turned to "sleet" and "rain" by the early morning on January 8. Despite the snow, many residents, including Abdullah, opted to park their vehicles on the Road, not in a rear parking lot, as they had been notified to do. At around 2 a.m. on January 8, 1994, Rolling Green contacted Oceanside Welding and Towing Company, Inc. (Oceanside) to tow the cars improperly parked on the Road. Oceanside towed sixteen cars parked on Rolling Green Road, including Abdullah's. Abdullah and other residents recovered their cars after paying tow and storage charges to Oceanside, which allegedly had refused to release the vehicles until payment was made.

Subsequently, Abdullah and seven other residents [1] filed a class-action lawsuit [2] against both Rolling Green and Oceanside, alleging that their towing and storage of the vehicles constituted tortious conversions and unfair and deceptive trade practices pursuant to G.L.1956 chapter 13.1 of title 6.[3] As discovery proceeded, depositions taken from the named parties, including Abdullah, established undisputedly the existence of Rolling Green's snow policy, plaintiffs' notice of the policy, and snowstorm conditions on January 7, 1994.

Accordingly, after discovery, Rolling Green made a motion for summary judgment on November 20, 1998. The plaintiffs, in their memorandum in opposition to summary judgment, cited portions of deposition testimony to contend that the plaintiffs received no notice for this "particular" storm and that it was not snowing when the vehicles were towed.

A Superior Court trial justice, on April 23, 1999, issued a decision granting Rolling Green's motion for summary judgment. The trial justice ruled that Rolling Green, in authorizing the removal of the residents' vehicles, had not committed a tortious conversion because the record indicated that Abdullah and the other residents had "sufficient notice of the parking policy in snowy conditions and, in fact, consented to the consequences of non-compliance." The decision cited in part Abdullah's deposition testimony, in which she testified unequivocally that she had received a "couple" of notices concerning Rolling Green's towing policy during impending or ongoing snowstorms. The trial justice also found it

---

1. The seven other plaintiffs were Helen Ames, Leslie McCalla, Mark and Maria Godin, Shari and John Pinheiro, and Ray Bowens.

2. The civil action was filed pursuant to Rule 23 of the Superior Court Rules of Civil Procedure and G.L.1956 § 6–13.1–5.2, however the action was never certified as a class action.

3. Oceanside Welding and Towing Company, Inc., and its president, Carol Keith, originally were named as defendants in this action. The Superior Court entered default judgments against them for failure to answer or defend the claims made against them.

undisputed that a snowstorm had been predicted and that it had snowed heavily on January 7, 1994. In addition, the trial justice determined that Oceanside's failure to release the vehicles until the towing and storage expenses were paid was reasonable and, thus, did not constitute a conversion and that, by this point, Rolling Green no longer exercised any dominion over the vehicles since the "policy imposing the contingency of payment before release of the vehicles concerns" Oceanside, not Rolling Green. The trial justice also found that the residents, in challenging the manner in which the vehicles were obtained, failed to show an unfair or deceptive trade practice. Judgment was therein entered for Rolling Green on June 9, 1999.

Abdullah is the only claimant to appeal the trial justice's grant of Rolling Green's motion for summary judgment.[4] In her appeal, she contends that the Superior Court erred in granting Rolling Green's motion for summary judgment in light of the "genuine issues of material fact in dispute between the parties." Among these disputed issues, according to Abdullah, are whether Rolling Green provided proper notice of the towing policy to the residents, whether residents consented to the consequences for noncompliance with the policy, and whether Oceanside and Rolling Green acted in concert when Oceanside refused to release the towed vehicles until payment was tendered. We agree with the trial justice that no genuine issues of material fact were shown to exist.[5]

## II. Summary Judgment

██ "On a motion for summary judgment we apply the same standards that the trial justice must apply pursuant to Rule 56(c) of the Superior Court Rules of Civil Procedure." *Paradis v. Zarrella*, 683 A.2d 1337, 1339 (R.I.1996) (per curiam); *Hydro–Manufacturing, Inc. v. Kayser–Roth Corp.*, 640 A.2d 950, 954 (R.I.1994). That is, after examining the pleadings, depositions and other relevant documents in the light most favorable to the nonmoving party, the trial justice must ascertain whether any genuine issue of material facts exists. *See Paradis*, 683 A.2d at 1339. The nonmoving party then bears the burden of proving with competent evidence the existence of a factual dispute and cannot rely upon mere allegations or denials. *See id.* If the trial justice fails to discern a genuine issue of material fact, he or she must grant the motion for summary judgment. *See id.; see also* Super. R. Civ. P. 56(c).

█ We have reasoned that "the gravamen of an action for conversion lies in the defendant's taking the plaintiff's personalty without consent and exercising dominion over it inconsistent with the plaintiff's right to possession." *Montecalvo v. Mandarelli*, 682 A.2d 918, 928 (R.I.1996);

---

**4.** It appears that on appeal to this Court, Abdullah tried to supplement the record to include more deposition testimony upon which this Court could make a determination about whether the entry of summary judgment was appropriate. We ultimately determined that the record should not be supplemented with additional testimony. Nevertheless, a review of that other testimony reveals that the material facts remain undisputed.

**5.** Rolling Green contends in its brief that since Abdullah failed to order a transcript of the summary judgment hearing before the Superior Court, meaningful review cannot be performed and this Court has "no choice but to uphold the trial justice's findings." Yet, Rule 10 of the Supreme Court Rules of Appellate Procedure provides that within ten days after filing the notice of appeal a transcript need be provided only as "the appellant deems necessary for inclusion in the record."

If the appellant deems the ordering of the transcript unnecessary, as she did in this case, Rule 10(b)(1) then directs that the "appellant shall, within the time above provided, file and serve on the appellee a description of the parts of the transcript which the appellant intends to include in the record and a statement of the specific points upon which he or she intends to rely on the appeal." Rolling Green has not raised any contention in regard to any alleged noncompliance with this latter provision.

(quoting *Fuscellaro v. Industrial National Corp.*, 117 R.I. 558, 560, 368 A.2d 1227, 1230 (1977)); *see also* Restatement (Second) *Torts* § 222(A)(1) (1965). In this case, we agree with the trial justice that it was undisputed that plaintiff Abdullah both had previous notice of Rolling Green's towing policy, of the consequences for non-compliance with that policy, and of the snowing conditions on January 7, 1994. That Abdullah had not been specifically notified on January 7, 1994, of the towing policy is inconsequential, in light of her acknowledgment in her deposition that she was aware of the towing policy. It is also inconsequential that the snow turned to rain in the early morning hours of January 8, 1994, considering that it had snowed heavily on January 7. Accordingly, the trial justice properly found that as a matter of law Abdullah had "consented" to the towing and, thus, Rolling Green cannot be said to have converted her vehicle in having it towed.

■ We also agree with the trial justice's finding that Rolling Green did not act in "concert" with Oceanside in allegedly converting Abdullah's vehicle by failing to release it until Abdullah paid for tow and storage charges. This Court has adopted the Restatement (Second) *Torts* § 876 (1979) for determining whether individuals or entities act in concert, which provides:

"For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." *See also Curtin v. Lataille*, 527 A.2d 1130, 1132 (R.I.1987).

In this case, Rolling Green did not commit a tortious act by having Abdullah's car towed. Furthermore, after Oceanside towed the car, Rolling Green neither had possession of the vehicle nor in any way encouraged or assisted Oceanside to retain Abdullah's vehicle, and it did not reap any profit from that undertaking. Since we determine that Rolling Green was not acting in concert with Oceanside, we need not · address whether Oceanside's demand of payment for towing and storage before releasing Abdullah's vehicle constituted a conversion or an improper possessory lien. Accordingly, we agree that the trial justice properly entered summary judgment on Abdullah's conversion claim.

■ As to Abdullah's claim of an unfair and deceptive trade practice, we also agree that the entry of summary judgment was appropriate. In looking to determine whether a practice is "unfair" under the statute, this Court considers:

" '(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or other-wise-whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).' "[6] *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244–45 n. 5, 92 S.Ct. 898, 905 n. 5, 31 L.Ed.2d 170, 179 n. 5 (1972).

6. Section 6–13.1–2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful" and § 6–13.1–3 directs this Court to interpret that provision according to the Federal Trade Commission's and federal courts' interpretation of § 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1).

In this case, Rolling Green's towing policy served the legitimate purpose of providing access to plows and emergency vehicles. As the residents of the Village had notice of the policy and had complied with it in the past, we agree that there is no genuine dispute that Rolling Green's towing of Abdullah's car failed to constitute an unfair or deceptive trade practice. Since Rolling Green did not act in concert with Oceanside in holding Abdullah's vehicle until Abdullah paid, Rolling Green also cannot be held liable for any unfair or deceptive trade practice that may have arisen from Oceanside's refusal to release Abdullah's car upon request.

### III. Conclusion

We affirm the entry of summary judgment in this case and deny the plaintiff's appeal. We order the papers of this case returned to the Superior Court.

Chief Justice WILLIAMS did not participate.