OPINION
Justice GOLDBERG, for the Court.
In this putative class action, the plaintiffs allege that Dell[1] violated the Deceptive Trade Practices Act (DTPA), G.L. 1956 chapter 13.1 of title 6, and that Dell was negligent by improperly collecting sales taxes on certain services purchased in conjunction with the sales of its computer products. A justice of the' Superior Court granted summary judgment in favor of Dell on both counts. This case has been pending for more than ten years and thus far has resulted in two opinions of this *992 Court. It is not over. For the reasons set forth below, we affirm the grant of summary judgment on the negligence count and on the request for injunctive relief by the plaintiff, Nicholas T. Long. However, the grant of summary judgment on the DTPA count by the plaintiff Julianne Ricci is vacated. Additionally, we affirm the Superior Court justice’s grant of the plaintiffs’ motion to strike the tax administrator’s affirmative defenses.[2]
Facts and Travel
This Court discussed the facts of this case in detail in two previous opinions. See Long v. Dell Inc., 984 A.2d 1074, 1075-78 (R.I.2009); DeFontes v. Dell Inc., 984 A.2d 1061, 1062-65 (R.I.2009). Therefore, we will .only recount recent events and those facts that are necessary for context.
The named plaintiffs, Nicholas Long (Long) and Julianne Ricci (Ricci) (collectively and on behalf of the putative class, plaintiffs), purchased Dell computers in late 2000. Along with their computers, they also selected an optional service contract, which essentially amounted to an extended warranty on the computers.[3] As the receipt for payment, Ricci received a three-page “acknowledgment” with her order. The first item listed on the acknowl-edgement is a “Dimension 4100 Series, Pentium Processor at 866 MHz” — presumably the main computer component. The “Unit Price” and “Amount” set forth for this item were both “1,576.00.” The next thirty lines in the acknowledgement eon-tained different item numbers and product descriptions, all of which set forth the “Unit Price” and “Amount” as “0.00.” Finally, a printer cable was listed with a “Unit Price” and “Amount” of “24.95.” A box on the front page of the acknowledgement summarized the charges. The computer, the printer cable, and a shipping and handling charge of $105 brought the subtotal to $1,705.95. The box also set forth that $233 of that amount was taxable, and thus a tax of $16.31 was added. The total paid by Ricci to Dell was $1,722.26. Ricci purchased her computer for personal use.
Long received a- similar “acknowledgment” with his order. Only the first line contained a “Unit Price” and “Amount”— both were “2,804.00.” The summary box added a shipping and handling charge of $35 for a subtotal of $2,839. The box denoted that the entire $2,839 subtotal was taxable and charged $198.73 in tax. Thus, Long ultimately paid a total of $3,037.73 to Dell. Unlike Ricci, Long purchased his Dell computer for business purposes.
This class action lawsuit commenced in May 2003.[4] The crux of the complaint is that Dell charged both Ricci and Long sales tax on nontaxable services.[5] The two-count complaint alleged that defendants violated the DTPA and were liable for negligence. In their prayer for relief, plaintiffs requested damages, as well as declaratory and injunctive relief. The defendants moved to stay the proceedings *993 and compel arbitration, arguing that by accepting delivery of the goods, plaintiffs agreed to the terms and conditions agreement, which contained an arbitration provision. The Superior Court justice denied that motion and entered an order of final judgment on March 29, 2004. The defendants appealed from that judgment.
In March 2005, Dell requested a determination from the Rhode Island Division of Taxation regarding the application of the sales and use tax. The Division of Taxation responded with a letter ruling.[6] The letter ruling, which was written by the Chief Revenue Agent, began its discussion by referencing Regulation SU 00-126, entitled “Optional Service, Maintenance, and Extended Warranty Contracts,” which stated, inter alia, that “[t]he charge for the optional service, maintenance, or extended warranty contract is not subject to tax when such a charge is separately stated by the retailer to the purchaser.” The letter stated that “[t]he intent of the regulation is to exempt an optional service, maintenance, and extended warranty contract from sales tax when the contract is optional to the buyer, and the charge is separately stated by the retailer to the purchaser.” Initially, the ruling stated that when a Dell invoice or acknowledgment “provided to a customer showed a total sales price for all items in the order and a unit price of ‘0.00[’] for each individual item, including the service contract and extended warranty, the sales tax was properly applied to the total sales price.” Directly applying the facts here, however, the letter concluded, “Since the service contract is optional to the buyer and a separate charge under ‘taxable amount’ is noted elsewhere on the invoice or acknowl-edgement as being for a 3rd party service contract, [Dell] Catalog should not have imposed the sales tax.”
In March 2007, while the appeal of the order denying the motion to compel arbitration was pending, defendants moved for summary judgment. In response, plaintiffs requested that the Tax Administrator for the Rhode Island Division of Taxation (the tax administrator) be notified of the proceeding because defendants’ contentions on summary judgment implicated Rhode Island tax law. The tax administrator then moved to intervene in the case. The Superior Court justice permitted the tax administrator to intervene solely “for the purpose of appearing and being heard on the issues of subject matter jurisdiction, the proper interpretation and construction of tax regulations and statutes, and the application and constitutional validity of tax statutes.” The tax administrator moved to dismiss the case for lack of subject-matter jurisdiction. The Superior Court justice denied the motion to dismiss. The defendants and the tax administrator petitioned this Court for writs of certiorari to review the question of subject-matter jurisdiction, and we granted the petitions.
*994 On December 14, 2009, this Court issued separate opinions on these preliminary issues. In DeFontes, 984 A.2d at 1073, we held that the Superior Court justice properly denied defendants’ motion to compel arbitration because plaintiffs did not agree to be bound by the terms and conditions in the shrinkwrap agreement contained in the computer’s packaging. In Long, 984 A.2d at 1081, we held that that the Superior Court had subject-matter jurisdiction over the DTPA claim and ancillary jurisdiction over the negligence claim. We remanded the case to the Superior Court. Id., at 1082.
With the arbitration and subject-matter jurisdiction issues resolved, the Superior Court turned to defendants’ summary judgment motion. First, the Superior Court justice decided to consider only the facts and claims of the individual plaintiffs — not the purported class of plaintiffs' — because the class had not yet been certified. Additionally, he noted that after his previous decision and this Court’s opinions, the only claims that remained as to Long were those seeking equitable or declaratory relief because Long’s claims under the DTPA and for negligence had been dismissed. Addressing those claims, the Superior Court justice concluded that the prayer to enjoin defendants from collecting improper taxes was moot because there was no evidence to suggest that defendants continue to improperly collect the tax. Accordingly, for purposes of summary judgment, the Superior Court justice considered “only the claims of improper collection of tax on the optional service contract, as evidenced in Ricci’s acknowledgment of her purchase of a Dell computer, and the facts associated therewith.”
Next, the Superior Court justice concluded that Ricci should not have been charged a sales tax on her service contract. Although service contracts were not taxable in Rhode Island, Dell contended that Rhode Island Tax Regulation SU GO-126, which provided that “[t]he charge for the optional service, maintenance or extended warranty contract is not subject to tax when such charge is separately stated by the retailer to the purchaser,” nonetheless mandated that a tax be charged because Dell contends the “acknowledgement” it sent to Ricci did not separately state the service contract price. However, in its 2005 letter ruling, the Division of Taxation concluded that Dell’s “acknowl-edgement” did, in fact, separately state the service contract price, and Dell should not have taxed the service contract. Based on the letter ruling, the tax regulation, and the opinions of this Court, in particular language from our opinion in Long, the Superior Court justice found that Dell improperly charged Ricci $16.31 in sales tax on the optional service contract.
Having concluded that Ricci was improperly taxed, the Superior Court justice next addressed Dell’s legal arguments that it was nonetheless not liable under the DTPA or in negligence.[7] Addressing the negligence claim, he concluded that “[a] seller’s duty with regard to the collection of sales tax is to the State, not the consumer.” He reasoned that the seller is subject to state penalties for failing to properly remit sales taxes to the state. Further, he noted that there is little incentive for a seller to over-collect taxes. Comparatively, any injury to a consumer is relatively minor. Finally, consumers now have an independent right to seek a refund if they are inappropriately taxed. Accordingly, *995 the Superior Court justice concluded that Dell did not owe a duty to Ricci, and therefore Ricci did not have an actionable tort claim.
Turning to the DTPA claim, the Superi- or Court justice first addressed whether the practice was “unfair.” The court concluded that “Dell’s honest misinterpretation of a delicate area of the state tax law cannot be held to be an unfair act.” The Superior Court justice noted that Ricci did not come forth with any evidence tending to prove that Dell acted immorally or unethically. He also questioned whether Ricci’s monetary injury of $16.31 was “substantial.” Next, the court addressed whether Dell’s actions were “deceptive” under the DTPA. Although the Superior Court justice found that charging a sales tax constituted a representation that was misleading, he concluded that the misrepresentation was not “material” to constitute a deceptive act under the statute because it was so paltry as to have no effect on Ricci’s decision to purchase the product.[8] Accordingly, the court concluded that “as a matter of law, Dell’s actions did not constitute negligence or violate the DTPA.”
In the same decision, the Superior Court justice also addressed plaintiffs’ motion to strike the tax administrator’s affirmative defenses.[9] Noting that no claims had been asserted against the tax administrator and that the conditions precedent to the allegedly conditional defenses had not arisen in this case, the Superior Court justice struck the defenses as immaterial under Rule 12(f) of the Superior Court Rules of Civil Procedure.
On April 9, 2012, an order and final judgment entered, granting defendants’ motion for summary judgment and plaintiffs’ motion to strike. The plaintiffs appealed the order granting summary judgment to defendants, and the tax administrator appealed the order striking his affirmative defenses.
Standard of Review
“[T]his Court reviews a grant of summary judgment de novo.” Sullo v. Greenberg, 68 A.3d 404, 406 (R.I.2013) (quoting Sacco v. Cranston School Department, 63 A.3d 147, 149-50 (R.I.2012)). We examine the case “from the vantage point of the trial justice who passed on the motion for summary judgment, [and] ‘[w]e view the evidence in the light most favorable to the nonmoving party * * *.’” Id. (quoting Sacco, 53 A.3d at 150). In performing this review, we draw all reasonable inferences in favor of the nonmoving party. See Peloquin v. Haven Health Center of Greenville, LLC, 61 A.3d 419, 424-25 (R.I.2013) (noting that “the facts and all reasonable inferences therefrom” are viewed “in the light most favorable to the nonmoving party”) (quoting Derderian v. Essex Insurance Co., 44 A.3d 122, 126-27 (R.I.2012)). “Ultimately, the ‘purpose of the summary judgment procedure is issue finding, not issue determination.’” DeMaio v. Ciccone, 59 A.3d 125, 130 (R.I.2013) (quoting Estate of Giuliano v. Giuliano, 949 A.2d 386, 391 (R.I.2008)). Summary judgment is appropriate only when “there is no genuine issue as to any material fact and * * * the moving party is *996 entitled to judgment as [a] matter of law.” Sola v. Leighton, 45 A.3d 502, 506 (R.I. 2012) (quoting Plunkett v. State, 869 A.2d 1185, 1187 (R.I.2005)). If the evidence submitted permits an inference that creates a genuine issue of material fact, the motion must be denied. See DeMaio, 59 A.3d at 132 (holding that a Superior Court justice may not choose between conflicting inferences at summary judgment stage). “[SJummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously.” Cruz v. DaimlerChrysler Motors Corp., 66 A.3d 446, 451 (R.I.2013) (quoting DeMaio, 59 A.3d at 129).
Furthermore, this case presents the issue of whether, for purposes of a motion for summary judgment, the Court should treat the alleged class as certified, or whether the Court should only consider the facts pertaining to the named plaintiffs.[10] At the outset of his analysis, the Superior Court justice stated, “Because the class is not certified, this Court will consider the [mjotion on the facts and claims of the individually-named Plaintiffs, and not those of any purported class.” The defendants contend that this is the correct approach and cite federal case law purporting to support that proposition. The plaintiffs, however, argue that the Court must treat the class as certified because the Court views the evidence in the light most favorable to the nonmoving party at the summary judgment stage.
This Court previously has stated that, “[bjecause we review this evidence in the light most favorable to plaintiffs [ie., the nonmoving party], to the extent that it relates to our decision, we treat this case as though it were certified as a class action.” Chavers v. Fleet Bank (RI), N.A., 844 A.2d 666, 679 n. 12 (R.I.2004). We adhere to that reasoning in the case at bar. Such a rule is most consistent with our summary judgment jurisprudence, which requires that, when performing de novo review, we view the evidence in the light most favorable to the nonmoving party. See Sullo, 68 A.3d at 406. Furthermore, this approach promotes the class action objectives of compensation for small injuries and efficiency. See 1 William B. Ru-benstein, Newberg on Class Actions § 1:7 at 17-21 (5th ed. 2013) (noting that, when individual claims are for small amounts of money, a class action is the only practical means to seek compensation); id. § 1:9 at 26 (“Aggregate litigation promotes administrative efficiency.”). This principle of treating the class as certified, however, does not mean that a plaintiff can simply multiply a small injury to an individual plaintiff by a large number with no basis in fact. There must be evidence in the record from which a factfinder could infer facts that may apply class-wide.
The legal basis underpinning the cases cited by defendants is that a precertification ruling does not bind absent class members. While that is true, we decline to draw the conclusion that such a rule then compels this Court to disregard the procedural standard when confronted with a summary judgment motion. The question of who will be bound by a judgment is' markedly different from the question of *997 what is the appropriate decisional standard. Furthermore, none of the cases cited by defendants addresses the unique summary judgment issue that confronts us in this case. In Lewis v. Casey, 518 U.S. 343, 357-58, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the United States Supreme Court merely commented that the named plaintiffs in a class action must have standing. Also, the Court was reviewing a bench trial; it was not reviewing a summary judgment ruling. Id. In Jackson v. Resolution GGF Oy, 136 F.3d 1130, 1132 (7th Cir.1998), the Seventh Circuit dismissed a defendant because no individual plaintiff had standing against that defendant; again, the summary judgment standard was not a concern. Finally, defendants cite a quote from an unreported trial court decision, Evans v. Taco Bell Corp., CIV. 04CV103JD, 2005 WL 2333841, at *3, *4 (D.N.H. Sept. 23, 2005), that was made in the context of a motion to strike. There, the court refused to consider a doctor’s affidavit that contained a medical opinion regarding a person who was not a plaintiff because the class was not yet certified. Id. at *4. Although the court in Evans went on to address a summary judgment motion, the relevant issue in that case was direct evidence submitted regarding a nonparty in an uncertified class action. Id. Treating a class as certified for summary judgment purposes — and thus permitting an inference of class-wide injury from facts in the record — is different from submitting evidence regarding a specific person or entity that is not a party to the case.
We pause to note that the timing of class certification is a complex question which depends on the circumstances of each case. See 3 William B. Rubenstein, Newberg on Class Actions § 7:8 at 38 (5th ed. 2013) (“Given that policy concerns cut different ways in different circumstances, a court’s decision to consider dispositive motions before or after a ruling on class certification depends greatly on the individual circumstances of the particular case.”); id. § 7:10 at 48-58 (discussing factors to evaluate timing of class certification to summary judgment). Our conclusion in this case should not be read as an endorsement of delayed class certification. We accord great deference to a Superior Court justice’s decision to certify a class. DeCesare v. Lincoln Benefit Life Co., 852 A.2d 474, 487-88 (R.I.2004) (“A trial court’s decision to certify a class is accorded great deference and will not be disturbed unless the trial court misconceived material evidence, substantially abused its discretion or was otherwise clearly wrong.”). Given the long duration of this case, however, we must remind the parties that Rule 23(c)(1) of the Superior Court Rules of Civil Procedure contains a timeliness requirement. See Zarrella v. Minnesota Mutual Life Insurance Co., 824 A.2d 1249, 1262 n. 16 (R.I.2003) (discussing timeliness requirement). While we previously have looked to Rule 23 of the Federal Rules of Civil Procedure for interpretative guidance, we also note that this state has not adopted the 2003 amendments to the federal rule, with its more liberal timeliness requirement. Compare Super. R. Civ. P. 23(c)(1) (“As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained.”), with Fed.R.Civ.P. 23(c)(1)(A) (“At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.”). But cf. 3 Rubenstein, § 7:5 at 24 (“By excising the ‘as soon as’ formulation, the new language gives courts more time to address certification, bringing the rule in line with what had become a de facto practice even under the older, more urgent language.”).
*998 Analysis
I
Motion for Summary Judgment
Negligence
In count 2 of the complaint, plaintiffs allege that Dell breached its duty “to properly calculate and collect sales tax * * * due on purchases made by Rhode Island residents and businesses.” The defendants argue that no such duty exists, and, therefore, the Superior Court justice properly granted summary judgment to defendants on count 2.
“To properly set forth a claim for negligence, a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage.” Brown v. Stanley, 84 A.3d 1157, 1161-62 (R.I.2014) (quoting Willis v. Omar, 954 A.2d 126, 129 (R.I.2008)). If a defendant does not owe a legal duty to the plaintiff, then the defendant cannot be liable for negligence. Id. at 1162.
“It is well settled that ‘[w]hether a defendant is under a legal duty in a given case is a question of law.’ ” Brown, 84 A.3d at 1162 (quoting Willis, 954 A.2d at 129). We assess the question of legal duty on a case-by-case basis, and we examine “all relevant factors, including the relationship of the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations, and notions of fairness.” Gushlaw v. Milner, 42 A.3d 1245, 1252 (R.I.2012) (quoting Volpe v. Gallagher, 821 A.2d 699, 705 (R.I.2003)).
The provision of the General Laws that imposes a sales tax provides that a tax “is imposed upon sales at retail” and “is paid to the tax administrator by the retailer at the time and in the manner provided.” G.L.1956 § 44-18-18. The state further effectuates the payment of taxes by retailers through a number of penalties for failure to properly remit sales taxes to the state. See, e.g., G.L.1956 § 44-19-12 (10 percent penalty for deficiency “due to negligence or intentional disregard of [sales and use tax provisions]”); § 44-19-31 (A retailer may be, “in addition to any other penalties in this chapter or elsewhere prescribed, guilty of a felony, punishment for which is a fine of not more than ten thousand dollars ($10,000), or imprisonment for one year, or both”). Thus, the retailer’s duty with regard to the tax is to the tax administrator, not the consumer.
The plaintiffs contend that G.L. 1956 § 44-18.1-26, entitled “Customer refund procedures,” “constitutes a legislative acknowledgement that Rhode Island law already allow[ed] a purchaser to seek a return of over-collected sales or use tax from the seller.” Section 44-18.1-26 provides:

“Customer refund procedures.

“(A) These customer refund procedures are provided to apply when a state allows a purchaser to seek a return of over-collected sales or use taxes from the seller.
“(B) Nothing in this section shall either require a state to provide, or prevent a state from providing, a procedure by which a purchaser may seek a refund directly from the state arising out of sales or use taxes collected in error by a seller from the purchaser. Nothing in this section shall operate to extend any person’s time to seek a refund of sales or use taxes collected or remitted in error.
“(C) These customer refund procedures provide the first course of remedy available to purchasers seeking a return *999 of over-collected sales or use taxes from the seller. A cause of action against the seller for the over-collected sales or use taxes does not accrue until a purchaser has provided written notice to a seller and the seller has had sixty days to respond. Such notice to the seller must contain the information necessary to determine the validity of the request.
“(D) In connection with a purchaser’s request from a seller of over-collected sales or use taxes, a seller shall be presumed to have a reasonable business practice, if in the collection of such sales or use taxes, the seller: (i) uses either a provider or a system, including a proprietary system, that is certified by the state; and (ii) has remitted to the state all taxes collected less any deductions, credits, or collection allowances.”
This provision — a section of the uniform Streamlined Sales And Use Tax Agreement — does not apply to this case, the events of which took place in 2000, because it was not enacted until 2006 and became effective in 2007. See P.L. 2006, ch. 246, art. 30, §§ 12, 21. Even if § 44-18.1-26 did apply, it merely provides a procedural mechanism to seek recovery; the act did not establish a new legal tort duty.[11]
The public policy of the state is to collect taxes that are due and owing. As discussed above, the General Assembly has chosen to compel retailers to collect the appropriate amount of taxes by imposing penalties for failure to remit the proper amount of sales tax. If this Court recognized the duty proposed by plaintiffs, the result would be an opposing incentive to under-collect sales taxes when the tax law is unclear. This, in turn, would lead to a decrease in the amount of taxes collected by the state, in contravention of the state’s interest in receiving revenue. Furthermore, the over-collection of sales taxes by retailers is rarely a problem. Retailers are under economic pressure to minimize the total price paid by the consumer. A charge of more sales tax than required typically serves no business purpose — it increases the price to consumers (thus making them less likely to buy the product), and it does not increase the profits of the businesses because the money collected is simply remitted to the state.
Finally, notions of fairness also favor our conclusion that a retailer does not owe a duty to consumers to properly collect sales tax. As discussed above, retailers already owe a duty to the state and are subject to penalties for under-collection. It would be untenable to make retailers subject to state penalties for under-collection and civil suit for over-collection. Such a policy would force retailers to be perfectly accurate in their tax calculations or face legal action. Given the complexity of tax law, which is rife with nuance and exceptions, it would be unfair to subject retailers to this additional duty.
Accordingly, we are satisfied that defendants did not owe a legal duty to plaintiffs regarding the collection of taxes, and therefore plaintiffs cannot establish the tort of negligence. The Superior Court justice properly granted defendants’ motion for summary judgment as to count 2.
Deceptive Trade Practices Act
The heart of this case is plaintiffs’ DTPA claim. The plaintiffs allege that Dell’s collection of sales tax on service contracts constituted an unfair and deceptive trade practice under the DTPA. Dell argues that its practice of charging sales *1000 tax was neither unfair nor deceptive and that it was merely following its understanding of Rhode Island tax law at the time. The Superior Court justice granted summary judgment to defendants on plaintiffs’ DTPA claim.
The DTPA provides that “unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful.” Section 6-13.1-2. To redress such unlawful practices, the DTPA provides a private right of action to “[a]ny person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal * * Section 6 — 13.1— 5.2(a). The statute also permits a class action. Section 6 — 13.1—5.2(b). “It is clear that in enacting the DTPA, the Legislature intended to declare unlawful a broad variety of activities that are unfair or deceptive, as well as to provide a remedy to consumers who have sustained financial losses as a result of such activities.” Park v. Ford Motor Co., 844 A.2d 687, 692 (R.I.2004). Thus, “[t]he DTPA is a remedial act and it should be liberally construed.” Long, 984 A.2d at 1081.
This Court has stated that “a plaintiff must establish that he or she is a consumer, and that defendant is committing or has committed an unfair or deceptive act while engaged in a business of trade or commerce.” Kelley v. Cowesett Hills Associates, 768 A.2d 425, 431 (R.I.2001). In the DTPA, the General Assembly provided interpretive guidance by declaring that “due consideration and great weight shall be given to the interpretations of the federal trade commission and the federal courts relating to § 5(a) of the Federal Trade Commission Act.” Section 6-13.1-3. Different analyses have developed regarding what constitutes an “unfair” practice and a “deceptive” practice, and we discuss them seriatim.
1. Unfair
To determine whether a trade practice is “unfair” under the DTPA, this Court has stated that the following factors apply:
“(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness;
(2) whether it is immoral, unethical, oppressive, or unscrupulous;
(3) whether it causes substantial injury to consumers (or competitors or other businessmen).” Ames v. Oceanside Welding and Towing Co., 767 A.2d 677, 681 (R.I.2001) (quoting FTC v. Sperry & Hutchinson Co., 405 U.S. 233, 244-45 n. 5 [92 S.Ct. 898, 31 L.Ed.2d 170] (1972)).[12]
*1001 The plaintiffs need not establish every factor, and they may prove unfairness by showing that a trade practice meets one factor to a great degree or two or three factors to a lesser degree. See Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 612 A.2d 1130, 1143-44 (1992) (“All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.”) (quoting Statement of Basis and Purpose, Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures, 43 Fed. Reg. 59,614 and 59,635 (1978)).
Addressing the first factor, the Superior Court justice concluded that Dell’s collection of sales tax on a nontaxable item offended public policy. We agree. Statutes passed by the Legislature are the state’s declaration of public policy. Thus, acting in contravention of those laws, as Dell clearly did, violates public policy.[13]
Regarding the second factor, the Superior Court justice concluded that Dell’s actions were not “immoral, unethical, oppressive, or unscrupulous.” The Superior Court justice accepted Dell’s argument that “the charge of sales tax on the optional service contract sold to Ricci was a good faith, reasonable interpretation of the tax law and regulations in effect.” Further, he stated that “Dell’s honest misinterpretation of a delicate area of the state tax law cannot be held to be an unfair act.” Dell takes this conclusion even a step further in its brief by arguing that the DTPA requires evidence of bad faith. This is incorrect. The DTPA does not require a showing of bad faith. It only requires an “unfair or deceptive” act or practice. Section 6-13.1-2. While trade practices undertaken in bad faith are also likely to be unfair or deceptive, bad faith is not the statutory standard.[14]
Whether Dell’s sales tax calculation and collection practice was in good faith and resulted in an honest misinterpretation is a question of material fact. Dell certainly can argue to a jury that it was acting under a good faith interpretation of tax law and therefore its conduct was not unfair. However, a jury could also draw the inference that Dell’s efforts to avoid its own tax nexus with Rhode Island unfairly resulted in consumers being charged for taxes that they should not have been charged.[15] Although taking steps to avoid *1002 a tax nexus to the state is not illegal, if those steps include overcharging consumers in order to achieve that goal, a factfin-der can determine the weight of such evidence on the ultimate question of whether Dell’s trade practice was unfair under the DTPA.
Additionally, the record contains internal records from Dell which make clear that Dell allocated a certain value to the service contracts. Yet, Dell chose not to clearly list that value in its acknowledgments sent to consumers. Nevertheless, Dell charged a sales tax on only the service contract value, and not the full purchase price. We note that a consumer could take a number of steps to figure out the service contract price: on the acknowl-edgement, the line items for the service contract include asterisks; the asterisk denotes, “service contract may be subject to sales tax”; and the first page of the acknowledgment states, “Dell Catalog Sales collects tax only in FL, KY, NC, NV, TN & TX. For other states the tax shown relates only to 3rd party service contracts and the buyer is responsible for remitting any additional tax directly to the taxing authorities.”[16] But it is for a jury to decide which inference to draw from Dell’s decision not to state clearly the service contract price on its acknowledgment. Indeed, a factfinder could conclude that Dell deliberately omitted the price of that item, resulting in a tax to the consumer in order to avoid a tax nexus for its own products. Accordingly, under the second factor in Ames, a jury could find that Dell’s improper collection of sales tax was immoral, unethical, oppressive, or unscrupulous. See Ames, 767 A.2d at 681; see also Long, 984 A.2d at 1081 (noting liberal construction of DTPA); Park, 844 A.2d at 692 (noting legislative intent “to declare unlawful a broad variety of activities that are unfair or deceptive”).
Regarding the third factor, the Superior Court questioned whether Ricci’s $16.31 loss constituted a substantial injury. Our conclusion regarding the standard of review becomes crucially important on this point. If the only injury to be considered in the light most favorable to plaintiff was $16.31, we may well agree with the Superi- or Court justice. However, because we treat the class as certified for purposes of drawing reasonable inferences in favor of the nonmoving party, and viewing evidence in the most favorable light to the nonmov-ing party, we will consider the evidence in the record of potential injury to the class. Chavers, 844 A.2d at 679 n. 12. The record contains multiple claims filed with the tax administrator for refunds of sales taxes remitted by multiple defendants. Dell Marketing LP claimed a refund of $900,000 for the period October 1, 2001 to December 31, 2003. BancTec, Inc. claimed a refund of $540,454 for the period October 1, 2001 to December 31, 2003. QualxServ, LLC claimed a refund of $145,451.07 for the period January 1, 2002 to October 30, 2004. All of these refund claims were prepared by the same attorney and all contained an explanation that they were “protective claimfs]” related to the outcome of this litigation. Accordingly, viewing the evidence in the light most favorable to the nonmoving party, a factfinder could infer an injury of over $1 million to the class. An injury of such monetary magnitude certainly qualifies as substantial.[17]
*1003 Therefore, a factfinder could conclude that Dell’s sales tax calculation and collection practice offended public policy, was immoral, unethical, oppressive, or unscrupulous, and caused substantial injury to consumers. Given that all three factors could weigh in favor of plaintiffs, a factfin-der could conclude that the trade practice was unfair under the DTPA.
2. Deceptive
Although this Court has not defined a “deceptive” act or practice under the DTPA, we are statutorily required to accord great weight to the FTC’s interpretation of § 5(a) of the Federal Trade Commission Act, and therefore we adopt that standard. Section 6-13.1-3. Therefore, to prove that a trade practice is deceptive under the DTPA, a plaintiff must set forth three elements: “[1] a representation, omission, or practice, that [2] is likely to mislead consumers acting reasonably under the circumstances, and [3], the representation, omission, or practice is material.” [18] F.T.C. v. Verity International Ltd., 443 F.3d 48, 63 (2d Cir.2006) (quoting In re Cliffdale Associates, Inc., 103 F.T.C. 110, 165 (1984)). “The deception need not be made with intent to deceive; it is enough that the representations or practices were likely to mislead consumers acting reasonably.” Id.
The Superior Court justice found that “Dell represented that there was sales tax, misleading the consumers who paid the tax,” but that the sales tax portion of the purchase price was not material under the DTPA because it had no effect on Ricci’s choice to purchase the product. Thus, the Superior Court justice found that Dell’s sales tax collection practice was not affected how much Ricci would have to pay. Dell argues that charging the tax was not likely to mislead consumers, and it was not material.
We agree with the Superior Court justice that Dell’s charge of the sales tax was a representation likely to mislead consumers acting reasonably under the circumstances. Dell represented that there was a sales tax on the service contract. That representation misled Ricci to pay the sales tax, when none was in fact due.
Regarding the third element, a representation is material if it “involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.” F.T.C. v. Patriot Alcohol Testers, Inc., 798 F.Supp. 851, 855 (D.Mass.1992) (quoting Cliffdale Associates, Inc., 103 F.T.C. at 165). Importantly for this case, “[e]xpress representations that are shown to be false are presumptively material.” Id. (citing Cliffdale Associates, Inc., 103 F.T.C. at 168, 182). Here, Dell made the express *1004 representation that sales tax was due on the service contract portion of Ricci’s purchase. But that representation was false. Therefore, Dell’s representation presumptively is material.
Dell points out that Ricci testified in her deposition that she was most concerned with the bottom-line price rather than the amount of the sales tax. And if she had properly been charged, ie., charged no tax, the price would have been lower, thus making her more likely to buy the product. Nevertheless, on summary judgment, these factors are insufficient to rebut the presumption of a material misrepresentation. Viewing the evidence in the light most favorable to plaintiff, the proper amount of sales tax is “information that is important to consumers,” and defendants’ trade practice affected plaintiffs’ conduct regarding the product — the total price paid for it. See Patriot Alcohol Testers, Inc., 798 F.Supp. at 855 (quoting Cliffdale Associates, Inc., 103 F.T.C. at 165). Accordingly, a factfinder could conclude that the practice was deceptive under the DTPA.
Because a factfinder could conclude that Dell’s practice of charging sales tax on service contracts was unfair or deceptive under the DTPA, we vacate the grant of summary judgment on count 1 of the complaint.
Requests for Injunctive and Declaratory Relief
In Long, 984 A.2d at 1078, we noted that “plaintiffs conceded that Mr. Long could not bring a DTPA claim because his purchase was made for a business purpose.” We also acknowledged that the Superior Court justice dismissed Long’s claims to “the extent he sought damages arising from Dell’s alleged negligence,” but that “[i]t is possible that Mr. Long may have a claim for equitable or declaratory relief— an issue that is not before us.” Id. at 1078 n. 8. In the case at bar, the Superior Court justice addressed the issue of equitable relief on summary judgment, and he found that “[plaintiffs’ prayer that the Court enjoin [defendants from collecting the allegedly improper taxes is moot, as Dell no longer collects [such taxes].”
The plaintiffs here allege only two counts — DTPA and negligence. Long’s concession that he has no DTPA claim because he purchased his computer for business purposes, Long, 984 A.2d at 1078, and our conclusion herein that summary judgment properly was granted on the negligence count, signal the end to Long’s ease because neither cause of action remains.
An injunction is a remedy, not a cause of action. See Thompson v. JPMorgan Chase Bank, N.A., 563 Fed. Appx. 440, 442 n. 1, 2014 WL 1586992, at *1 n. 1 (6th Cir.2014) (“ ‘Injunctive relief is not a cause of action, it is a remedy.”); Koufos v. U.S. Bank, N.A., 939 F.Supp.2d 40, 46 (D.Mass.2013) (“An injunction is not a cause of action, but a remedy.”); see also Davis v. Passman, 442 U.S. 228, 239-40 n. 18, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (noting that a “cause of action is a question of whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court; and relief is a question of the various remedies a federal court may make available”). Because Long has no underlying cause of action remaining, he has no right to seek the remedy of injunctive relief. Furthermore, the request for declaratory relief in the complaint requested a declaration that Dell’s practices were unfair or deceptive under the DTPA, were unlawful under the DTPA, and were breaches of Dell’s duty to properly calculate and collect sales tax. Because that request for declaratory relief *1005 relates solely to underlying rights or causes of action unavailable to Long, he may not pursue a declaratory judgment. Accordingly, the Superior Court justice properly dismissed Long’s requests for declaratory and injunctive relief. Ricci, however, may be entitled to seek declaratory or injunctive relief because, as discussed above, her DTPA claim survives, and “[t]he DTPA provides a private right of action to recover * * * equitable relief for violations of its provisions.” Long, 984 A.2d at 1080-81 (quoting Chavers, 844 A.2d at 670).
II
Motion to Strike
In a separate appeal, the tax administrator challenges the Superior Court justice’s grant of a motion to strike the tax administrator’s affirmative defenses. The Superior Court justice struck the defenses as immaterial under Rule 12(f) of the Superior Court Rules of Civil Procedure because no claims had been asserted against the tax administrator, and because the conditions precedent to the allegedly conditional defenses had not arisen in this case. The tax administrator argues that his affirmative defenses improperly were stricken.
Our discussion begins by addressing the standard of review; this Court has yet to declare the standard under which we will review a motion to strike in accordance with Rule 12(f). The plaintiffs contend that this Court should review a grant of a motion to strike for an abuse of discretion. The tax administrator argues that the standard of review is de novo.
Rule 12(f) provides: “the court may order stricken from any pleading any insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter.” This Court has stated that, “where the Federal rule and our state rule are substantially similar, we will look to the Federal courts for guidance or interpretation of our own rule.” Heal v. Heal, 762 A.2d 463, 466-67 (R.I.2000) (citing Smith v. Johns-Manville Carp., 489 A.2d 336 (R.I.1985)). Rule 12(f) of the Federal Rules of Civil Procedure is nearly identical to our state rule. See Fed.R.Civ.P. 12(f) (“The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter”).
Federal circuit courts hold that the standard of review of a Rule 12(f) motion to strike is abuse of discretion. See, e.g., Branch Banking and Trust Co. v. Lichty Bros. Construction, Inc., 488 Fed.Appx. 430, 434 n. 2 (11th Cir.2012) (“We review a district court’s decision to strike any defenses that are insufficient as a matter of law for abuse of discretion.”); Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974 (9th Cir.2010) (noting that “Rule 12(f) motions are reviewed for ‘abuse of discretion’ ”) (quoting Nurse v. United States, 226 F.3d 996, 1000 (9th Cir.2000)); Cambridge Toxicology Group, Inc. v. Ex-nicios, 495 F.3d 169, 178 (5th Cir.2007) (“This court reviews a motion to strike for abuse of discretion.”); Hatchett v. United States, 330 F.3d 875, 887 (6th Cir.2003) (“We review the grant of a motion to strike a pleading for abuse of discretion.”); Nationwide Insurance Co. v. Central Missouri Electric Cooperative, Inc., 278 F.3d 742, 748 (8th Cir.2001) (“Because a district court enjoys liberal discretion under Rule 12(f), * * * we review this claim for an abuse of discretion.”). Therefore, we will review this motion to strike under the abuse of discretion standard.
This is not a tax case, as we already have stated:
“This is a negligence action coupled with a claim alleging deceptive trade prac *1006 tices. Here, the gravamen of plaintiffs’ complaint is whether Dell (not the tax administrator) committed a deceptive trade practice by collecting taxes on the purchase of optional service contracts. The plaintiffs argue that these service contracts are not taxable in Rhode Island and that Dell, not the tax administrator, ignored the relevant statutes and regulations when it collected the tax. The fact that Dell may have paid over the money to the Division of Taxation does not change this result.” Long, 984 A.2d at 1080.
This case is about allegedly unfair or deceptive trade practices brought against Dell under the DTPA. While tax issues are implicated by the nature of plaintiffs’ DTPA claim, no party has filed a claim against the tax administrator in this case. Although some defendants have filed “protective” claims for refunds with the tax administrator, those claims are, or may become, separate cases with different standards and can be reviewed under the appropriate procedures when (or if) a decision in the case before us is made adverse to Dell. Because there are no claims against the tax administrator, there is nothing for the tax administrator to raise as an affirmative defense.
Furthermore, the tax administrator’s intervention in this case was limited; the Superior Court justice permitted the tax administrator to intervene “for the purpose of appearing and being heard on the issues of subject-matter jurisdiction, the proper interpretation and construction of tax regulations and statutes, and the application and constitutional validity of tax statutes.” This Court already has decided the subject-matter jurisdiction issue, and there is no challenge to the constitutional validity of the tax statutes. Thus, although the tax administrator may still appear and be heard on the proper interpretation, construction, and application of tax regulations and statutes, to the extent that these issues become germane, he may not defend against claims that are illusory in the context of this case. The maintenance of these affirmative defenses only distracts the parties from the real remaining issue in this case — whether Dell’s practice of collecting sales tax on service contracts was an unfair or deceptive trade practice.
We pause to note that the tax administrator cannot be collaterally estopped from raising any defenses that he was precluded from asserting in this case. The resolution of the tax refund claims is a separate matter. If a party files a claim against the tax administrator in this case, obviously, he may file an answer and assert affirmative defenses appropriate for the claims asserted. But unless and until that time comes, the tax administrator’s affirmative defenses are immaterial. See Super. R. Civ. P. 12(f). Accordingly, the Superior Court justice did not abuse his discretion by striking the tax administrator’s affirmative defenses.
Conclusion
For the reasons set forth in this opinion, we affirm the Superior Court justice’s rulings on count 2, negligence, and the declaratory and injunctive relief claims. We also affirm the Superior Court justice’s order striking the tax administrator’s affirmative defenses. However, we vacate the Superi- or Court justice’s ruling on count 1 (DTPA), and we remand the case to the Superior Court.

. The named defendants are Dell Computer Corporation, Dell Catalog Sales Limited Partnership, Dell Marketing Limited Partnership, QualxServ, LLC, and BancTec, Inc. The nuances of the legal relationships among these entities were discussed in our previous opinions in this case. See Long v. Dell Inc., 984 A.2d 1074, 1076 (R.I.2009); DeFontes v. Dell Inc., 984 A.2d 1061, 1062 (R.I.2009). In this opinion, "Dell” and "defendants” refer to the collective Dell entities (Dell Computer Corporation, Dell Catalog Sales Limited Partnership, and Dell Marketing Limited Partnership).

. We consolidate the two appeals for purposes of this opinion.

. These service contracts were actually third-party contracts, whereby third parties, including defendants BancTec and QualxServ, would handle any repairs. Long, 984 A.2d at 1076.

. Mary DeFontes initially filed this action, but she is no longer a plaintiff. See DeFontes, 984 A.2d at 1062, 1072. Long joined the suit as a plaintiff in July 2003. Id. at 1062. Ricci replaced DeFontes in June 2005, upon discovery that DeFontes was an employee of plaintiffs' counsel. Id. at 1065.

.There is no allegation that Dell retained the tax collected; it is undisputed that Dell remitted the tax collected to the state.

. The Division of Taxation describes a "letter ruling” as follows:
"A General Informational Letter, (commonly referred to as a 'Letter Ruling’) is unlike a Declaratory Ruling in that it generally seeks an interpretation of tax law or regulation without applying it to a specific set of facts. A General Informational Letter may be issued where it appears that general information only is requested, or where a request for a Declaratory Ruling does not comply with all the requirements for a Declaratory Ruling. General Informational Letters may not be relied upon by any taxpayer other than the taxpayer who requested the information. General Informational [L]etters are not binding on the Tax Division if there has been a misstatement or omission of material facts or, on a prospective basis, if there has been a change in law or applicable regulations or a decision on point is issued by the Rhode Island or Federal Courts.” Regulation DR 03-01.

. The trial justice concluded that three other theories — DTPA exemption for collection of sales tax, sovereign immunity, and unclean hands — did not preclude Dell’s potential liability to Ricci. Dell did not raise these issues on appeal.

. The Superior Court justice drew this conclusion from Ricci’s deposition testimony, where she stated that she did not care about the sales tax, only the total price of the computer.

. The affirmative defenses were (1) statute of limitations; (2) unclean hands; (3) “he who demands equity must do equity”; (4) setoff and recoupment; (5) statutory setoff; (6) failure to state a claim upon which relief may be granted; and (7) failure to exhaust administrative remedies.

. The defendants contend that plaintiffs waived this issue by failing to claim it as a ground of error in their opening brief. We disagree. Although plaintiffs did not address the issue in the context of the standard of review, they did contend that it was “plain error” for the Superior Court justice to question whether the improperly charged sales tax caused substantial injury because the class had not been certified; for this proposition, plaintiffs cited Chavers v. Fleet Bank (RI), N.A., 844 A.2d 666, 679 n. 12 (R.I.2004). Thus, we are satisfied that plaintiffs sufficiently raised the issue, and it is appropriately before the Court.

. Notably, plaintiffs did not follow the requisite procedure by providing the written notice required in G.L. 1956 § 44 — 18.1—26(C); this is understandable, however, because the statute did not exist at the time.

. The Superior Court justice applied these factors, and both parties present their DTPA arguments in their briefs by applying these factors. Therefore, we will apply these factors here. Nevertheless, we pause to note that the Federal Trade Commission (FTC) adjusted its interpretation of unfairness in a 1980 Policy Statement. See FTC Policy Statement on Unfairness, appended to In re International Harvester Co., 104 F.T.C. 949, 1070 (1984). Additionally, in 1994, Congress further defined the FTC’s role in determining an unfair trade practice:

“Standard of proof; public policy considerations

"The Commission shall have no authority under this section or section 57a of this title to declare unlawful an act or practice on the grounds that such act or practice is unfair unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by *1001 consumers themselves and not outweighed by countervailing benefits to consumers or to competition. In determining whether an act or practice is unfair, the Commission may consider established public policies as evidence to be considered with all other evidence. Such public policy considerations may not serve as a primary basis for such determination.” 15 U.S.C. § 45(n).
What effect the FTC’s 1980 policy statement and 15 U.S.C. § 45(n) have on the unfairness analysis is not before us.

. We note that, on appeal, Dell did not challenge the Superior Court justice’s determination that it was improper for Dell to charge Ricci a tax on the optional service contract.

. "Bad faith” is defined as ”[t]he malicious intention to be dishonest or to violate the law, as in negotiations over a contract.” American Heritage Dictionary of the English Language 133 (5th ed. 2011). Neither “unfair” itself nor its elaborative siblings — immoral, unethical, oppressive, or unscrupulous — carry a connotation of malice necessary to show "bad faith.”

.Dell did not have a tax nexus to Rhode Island and therefore was not registered with the Department of Taxation. However, Banc-Tec, a third party contractor that serviced Dell products under optional service contracts purchased by Dell’s customers, did have a tax nexus to Rhode Island. Under agreements between Dell and BancTec, Dell was required to collect any applicable sales and use tax on BancTec's behalf.

. It was this combination of information that led the letter ruling to conclude that the service contract price was, in fact, separately stated for tax collection purposes.

. The dissent draws a distinction between treating the plaintiff class as certified for purposes of summary judgment (on which the dissent takes no position) and aggregating the damages of the plaintiff class (on which the *1003 dissent disagrees). First, we reiterate that the aggregation to which the dissent refers is not automatic or culled out of thin air; an inference of class-wide injury can be drawn from competent evidence before the trial justice. Regardless, if the class is treated as certified, for purposes of viewing the evidence in the light most favorable to the nonmoving party on summary judgment, an inference of class-wide injury should be drawn when competent evidence permits. Under the dissent’s view, a named plaintiff in a class action must provide evidence that he or she individually suffered "substantial” injury by a trade practice of the deceptive under the DTPA. The plaintiffs argue that Dell’s trade practice was material because it defendant. This confounds the injury-in-fact requirement for standing — which is satisfied by Ricci's $16.31 injury — and the substantial injury prong of the DTPA analysis, and effectively eliminates the possibility of a class action under the DTPA surviving summary judgment prior to certification.

. The Superior Court justice applied this standard, and neither party on appeal suggests that another standard should apply.