**Nicholas T. LONG and Julianne Ricci, individually and on behalf of a class of persons similarly situated**

v.

**DELL, INC., et al.**

Nos. 2008–35–Appeal, 2007–346–M.P.

Supreme Court of Rhode Island.

Dec. 14, 2009.

Christopher Whitney, Esq., Providence, Edward Rapacki, Pro Hac Vice, Boston, MA, for Plaintiffs.

Stephen MacGilivray, Esq., Darlene Alt, Esq., Heather Pierce, Esq., Providence, John Shope, Pro Hac Vice, Boston, MA, Bernard Lemos, Pro Hac Vice, Providence, for Defendants.

Present: GOLDBERG and FLAHERTY, JJ., and WILLIAMS, C.J. (ret.).

## O P I N I O N

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on October 6, 2009. The defendants, Dell, Inc. f/k/a Dell Computer Corp., Dell Catalog Sales L.P., Dell Marketing L.P., Qualxserv, LLC, and Banctec, Inc. (Dell or collectively defendants) and the intervenor, David M. Sullivan, tax administrator for the State of Rhode Island, sought common-law certiorari to review the denial of a motion to dismiss this case for lack of subject-matter jurisdiction. The plaintiffs, Nicholas T. Long and Julianne Ricci (plaintiffs), individually and on behalf of a yet-to-be-certified class of persons similarly situated filed a class-action lawsuit in Superior Court alleging violations of the Rhode Island Deceptive Trade Practices Act (DTPA) under G.L. 1956 chapter 13.1 of title 6, as well as common-law negligence. For the following reasons, we affirm the order of the Superior Court, quash the writ, and remand the case to the lower court for trial.

## Facts and Travel

This case arrives before us as a putative class action involving Dell computers and the optional service contracts Dell offers for its products.[1] The central issue before us is whether the Superior Court has subject-matter jurisdiction to entertain the complaint. Before reaching that question, however, we must address the complex travel that brings us to this point.

The original plaintiff in this action was Mary E. DeFontes, individually and on behalf of a class of similarly situated persons. She brought suit on May 16, 2003, alleging defendants collected an improper tax on the service contracts. Subsequently, Nicholas T. Long joined the suit as a plaintiff on July 16, 2003; he included a new allegation that defendants collected an improper tax on the shipping and handling (transportation) charges, in addition to the service contracts. It is important to note that Mr. Long purchased his Dell computer for business purposes.[2] Also, it was

---

1. Shortly after this action was filed in Superior Court, defendants sought to stay proceedings and compel arbitration based on the "Terms and Conditions Agreement" between plaintiffs and Dell, which has a provision making arbitration mandatory for any content disputes. On January 29, 2004, the trial justice denied defendants' motion, declined to order arbitration and directed the case to proceed to trial. The defendants subsequently appealed to this Court, seeking a review of the decision denying arbitration; they sought to consolidate both cases. We denied the motion to consolidate. Because we held that the arbitration clause was unenforceable in *DeFontes v. Dell, Inc.*, No.2004–137–A., No.2004–114–A., 984 A.2d 1061, 2009 WL 4792012 (2009) it is necessary for us to decide whether the Superior Court is vested with subject-matter jurisdiction over the issues raised by the parties.

2. This distinction is of consequence to the outcome here because the DTPA provides only for purchases "primarily for personal,

discovered that Mary E. DeFontes was an employee of plaintiffs' counsel and, we are informed, plaintiffs filed a "Substituted First Amended Class Action Complaint" that replaced DeFontes with Julianne Ricci as named plaintiff, which the Superior Court granted. Ms. Ricci, unlike Mr. Long, purchased her Dell computer solely for personal use.

There are numerous defendants. Dell is a national computer hardware and software corporation, located in Texas. Within the corporation, there exists Dell Catalog and Dell Marketing, both of which are responsible for selling products to individuals and businesses. Whenever Dell sells a product, it offers consumers optional service repair contracts to address any defects in its products. Dell then acts as an agent for third-party service providers to handle these repairs, among which are defendants, BancTec and QualxServ. Those consumers who elected to purchase the optional service contract were charged a tax on their purchase price, which then was paid to the State of Rhode Island or collected by one of the third-party service providers and subsequently remitted to the State of Rhode Island by that entity. The collection of these taxes is the central dispute in this case.

The plaintiffs purchased their Dell computers, as well as the optional service contracts, in October and December 2000.

Also included in the purchase were charges designated as "ship. &/or handling." The plaintiffs allege that the tax levied on the service contracts and the shipping and handling fees was illegal and should not have been collected, they argue, because taxes are payable only on sales of personal property. Because the service contracts and shipping and handling charges are not personalty, plaintiffs contend that they were improperly charged, and they brought claims for negligence and violation of the DTPA. The plaintiffs agree with Dell's contention that the erroneous tax is approximately $50 for Mr. Long and Ms. Ricci combined. However, they are seeking additional statutory damages of $200 per person under the DTPA.[3] At the time of this appeal, the action had not yet been certified as a class action.

The defendants, on the other hand, argue that because the cost of the service contract and shipping and handling charges was not stated separately from the price of the hardware (the computer), then the tax must be computed on the entire transaction amount, as opposed to piecemeal taxation on only the hardware. This is the so-called "separately stated" concept of taxation, which was embodied in a former regulation of the Division of Taxation that was in effect at the time of the purchases in 2000.[4] The defendants further contend that, in accordance with G.L. 1956

family, or household purposes." *See* G.L. 1956 § 6–13.1–5.2(a).

**3.** Section 6–13.1–5.2(a) provides:

"Any person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act, or practice declared unlawful by § 6–13.1–2, may bring an action under Rules of Civil Procedure in the [S]uperior [C]ourt of the county in which the seller or

lessor resides, is found, has his or her principal place of business, or is doing business, or in the [S]uperior [C]ourt of the county as is otherwise provided by law, to recover actual damages or two hundred dollars ($200), whichever is greater. The court may, in its discretion, award punitive damages and may provide other equitable relief that it deems necessary or proper."

**4.** The previous regulation that defendants argue was Regulation SU 89–126. It subsequently has been superseded by Regulation SU 00–126.

§ 44–18–12(b)(5) (which has been amended), "shipping and handling" charges were taxable even if separately stated.[5]

Subsequently, in 2005 and 2006, defendants obtained letter rulings [6] from the tax administrator on the taxation issues that were raised in this case. The tax administrator's letter rulings declared that consumer transactions, such as Ricci's purchase for personal use, should not have included tax on the service contract because the invoice separately stated the service-contract price. However, the letter rulings also declared that the taxes collected on commercial-use transactions, such as Mr. Long's purchase, were proper because neither the service-contract price nor the "transportation" charges were stated separately. In short, the letter rulings found that the tax was properly collected on the entire amount for Long's purchase and was correct concerning the shipping and handling charge for Ricci's purchase. It should be noted that plaintiffs dispute the correctness of portions of these letter rulings and contest the validity of the regulation that originally gave way to the "separately-stated" rule. Neither issue, however, is before us.

In March 2007, defendants moved for summary judgment, arguing that Dell did not violate the DTPA as a matter of law, that the collection of sales tax was exempted from the act, that the collection of sales tax was neither deceptive nor unfair and finally, that defendants had no duty cognizable in tort.[7] The plaintiffs, however, argued that the motion for summary judgment could not be heard until the tax administrator was given notice of the proceedings in accordance with G.L. 1956 § 44–1–13, which provides:

"Whenever in any proceeding in court, by appeal or otherwise, the constitutionality or construction of any tax statute or the validity of the assessment of any tax is in question, the court before which the proceeding is pending shall not proceed with the hearing until notice, as the court may direct, has been given to the tax administrator of the pending of the proceeding, so that the tax administrator may appear and be heard with reference to the proceeding."

The tax administrator subsequently moved to intervene in the case, he filed a motion to dismiss, alleging that the Superior Court lacked subject-matter jurisdiction to hear this case. On October 19, 2007,

---

5. General Laws 1956 § 44–18–12(b)(5) was amended by P.L. 2006, ch. 246, art. 30, § 21, becoming effective on January 1, 2007 and replaced with a new statute, § 44–18–12(a)(iv) whereby both "shipping" and "shipping and handling" charges are taxable (incorporating terms via reference to § 44–18–7.1(i)).

6. According to the Division of Taxation, a letter ruling is:

"A General Informational Letter, (commonly referred to as a 'Letter Ruling') is unlike a Declaratory Ruling in that it generally seeks an interpretation of tax law or regulation without applying it to a specific set of facts. A General Informational Letter may be issued where it appears that general information only is requested, or where a

request for a Declaratory Ruling does not comply with all the requirements for a Declaratory Ruling. General Informational Letters may not be relied upon by any taxpayer other than the taxpayer who requested the information. General Informational letters [sic] are not binding on the Tax Division if there has been a misstatement or omission of material facts or, on a prospective basis, if there has been a change in law or applicable regulations or a decision on point is issued by the Rhode Island or Federal Courts."

7. The defendants also argued that plaintiff Long's claim was improper because his purchase was for business purposes, rather than as a consumer, and that plaintiff Ricci could not receive equitable relief because she owed more tax to the state than she had paid.

the hearing justice denied the tax administrator's motion as to Ms. Ricci's claims. On October 30, 2007, the hearing justice granted a stay of proceedings to allow defendants to seek review in this Court by way of certiorari. The hearing justice determined that based on this Court's decision in *Park v. Ford Motor Co.*, 844 A.2d 687, 694 (R.I.2004), in which we held that the Superior Court has jurisdiction over claims that are joined to a DTPA claim, there was ancillary jurisdiction over Ms. Ricci's negligence claim because the Court was vested with jurisdiction over the DTPA claim. The hearing justice also relied on our decision in *Park v. Ford Motor Co.*, 928 A.2d 469, 473 (R.I.2007), where we held that the Superior Court may exercise ancillary jurisdiction over other claims that a plaintiff may have, even if those claims would not meet the amount-in-controversy requirement, when those claims are joined with a DTPA claim.

Additionally, the hearing justice dismissed Mr. Long's claim for lack of subject-matter jurisdiction because his use of the Dell computer was for business and as such, the DTPA was not available as a remedy. Consequently, the hearing justice found that the Superior Court did not have subject-matter jurisdiction over Mr. Long's negligence claim because it could not possibly rise to the statutory threshold of $5,000. *See* G.L. 1956 § 8-2-14(a) (the Superior Court has jurisdiction over all actions at law in which the amount in controversy exceeds $10,000 and has concurrent jurisdiction with the District Court in those actions at law in which the amount in controversy exceeds $5,000 but is less than $10,000). The plaintiffs conceded that Mr. Long could not bring a DTPA claim because his purchase was made for a business purpose. Accordingly, the Superior Court dismissed Mr. Long's claims to the extent he sought damages arising from Dell's alleged negligence.[8]

This Court granted petitions for writ of certiorari, filed by defendants and the tax administrator in order to review the paramount question of subject-matter jurisdiction.

## Standard of Review

As we consistently have articulated, "a claim of lack of subject matter jurisdiction may be raised at any time." *Pollard v. Acer Group*, 870 A.2d 429, 433 (R.I.2005) (citing *LaPetite Auberge, Inc. v. Rhode Island Commission for Human Rights*, 419 A.2d 274, 280 (R.I.1980) and Rule 12(b)(1) of the Superior Court Rules of Civil Procedure). This Court reviews *de novo* whether a court has subject-matter jurisdiction over a particular controversy. *Newman v. Valleywood Associates, Inc.*, 874 A.2d 1286, 1288 (R.I.2005). Accordingly, because we are confronted with determining the correctness of the Superior Court's decision finding subject-matter jurisdiction, our review is *de novo*.

## Analysis

On appeal, plaintiffs argue that the hearing justice properly concluded that the Superior Court was vested with subject-matter jurisdiction over the issues in this case because there is both a negligence claim and an alleged violation of the DTPA, for which the Superior Court has exclusive jurisdiction in accordance with § 6-13.1-5.2(a). Conversely, defendants and the tax administrator, argue that in its essence, this case is a tax case and that plaintiffs should have made and then exhausted their administrative remedies,

---

**8.** It is possible that Mr. Long may have a claim for equitable or declaratory relief—an issue that is not before us.

first with the Division of Taxation, followed by an appeal to the Sixth Division District Court, in accordance with G.L. 1956 § 44–19–18.[9]

In short, we are confronted with two appellate contentions: first, whether the Superior Court was vested with subject-matter jurisdiction to hear this case and second, whether the hearing justice erred in refusing to dismiss Ricci's case for failure to exhaust her statutory and administrative remedies, relative to the tax claims. These issues inextricably are linked. In tax aggrievement cases, a party first must exhaust administrative remedies, including an appeal to the District Court and then may seek a writ of certiorari to this Court. *See* § 44–19–18; G.L. 1956 § 8–8–32.[10] Conversely, redress from a deceptive trade practice requires a party initially to file in Superior Court, in accordance with § 6–13.1–5.2(a) of the DTPA,[11] as plaintiffs did in this case. The defendants and the tax administrator urge us to hold that the Superior Court has no jurisdiction to entertain a DTPA case that may require the trial justice to interpret taxation statutes. We deem their arguments without merit.

■ As this Court has declared, "subject-matter jurisdiction is 'an indispensable requisite in any judicial proceeding.'" *Newman*, 874 A.2d at 1288 (quoting *Zarrella v. Minnesota Mutual Life Insurance Co.*, 824 A.2d 1249, 1256 (R.I.2003)). Subject-matter jurisdiction is the very essence of the court's power to hear and decide a case. Black's Law Dictionary defines subject-matter jurisdiction as, "[j]urisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things." Black's Law Dictionary 931 (9th ed. 2009).

It was conceded by the tax administrator that consumer purchases of Dell products and optional service contracts were not taxable purchases. This makes clear that all consumers, including Ms. Ricci, should not have been charged for those taxes, which were collected from them. This is consistent with the tax regulation that was in effect both at the time Dell initially sought guidance from the State of Rhode Island (Regulation SU 89–126) and at the time plaintiffs purchased their products (Regulation SU 00–126).[12] Most im-

9. General Laws 1956 § 44–19–18 provides:

"Appeals from administrative orders or decisions made pursuant to any provisions of this chapter are to the [S]ixth (6th) [D]ivision [D]istrict [C]ourt pursuant to chapter 8 of title 8. The taxpayer's right to appeal under this chapter is expressly made conditional upon prepayment of all taxes, interest, and penalties, unless the taxpayer moves for and is granted an exemption from the prepayment requirement pursuant to § 8–8–26."

10. General Laws 1956 § 8–8–32 provides:

"Any party in interest, if aggrieved by a final judgment rendered in proceedings brought under this chapter, may within twenty (20) days from the date of entry of the judgment petition the [S]upreme [C]ourt of the state of Rhode Island for a writ of certiorari to review any questions of law involved. The petition for writ of cer-

tiorari shall set forth the errors claimed. Upon the filing of such a petition with the clerk of the [S]upreme [C]ourt, the [S]upreme [C]ourt may, if it sees fit, issue its writ of certiorari to the [D]istrict [C]ourt to certify to the [S]upreme [C]ourt the record of the proceeding under review."

11. Section 6–13.1–5.2(a) of the DTPA provides that, "Any person * * * may bring an action under Rules of Civil Procedure in the *[S]uperior [C]ourt*." (Emphasis added.)

12. The hearing justice noted that although Regulation SU 89–126 was superseded by SU 00–126, for all intents and purposes of this case, there is no material difference from its predecessor. The current regulation provides: "The charge for the optional service, maintenance or extended warranty contract is not subject to tax when such charge is separately stated by the retailer to the purchaser."

portantly, this case does not concern an appeal from a decision by the tax administrator, who was given notice of this case because Dell disputed the tax administrator's regulations and letter rulings. The plaintiffs are aggrieved by the actions of defendants, not the tax administrator.

Dell and the tax administrator point to our holding in *Owner–Operators Independent Drivers Association of America v. State of Rhode Island,* 541 A.2d 69, 73 (R.I.1988) as support for their contention that this case is nothing more than a contested tax matter. We are satisfied, however, that *Owner–Operators* is distinguishable from the case before us. In that case, a foreign registered motor carrier was seeking a refund for a fuel decal tax imposed upon it by the Division of Taxation, individually and on behalf of others similarly situated. *Id.* at 70. The plaintiffs brought their class action in Superior Court against the State of Rhode Island, the Rhode Island Division of Taxation, its tax administrator, and the General Treasurer. *Id.* The plaintiffs' complaint sought to have the fuel decal tax statute declared unconstitutional as a violation of both the commerce clause and the privileges and immunities clause of the United States Constitution. *Id.* Additionally, the plaintiffs were seeking a tax refund from the state. The tax administrator moved to dismiss for lack of subject-matter jurisdiction, and the Superior Court granted the motion. *Id.* On appeal, this Court held that despite the presence of equitable claims for relief, *Owner–Operators* primarily was a tax case for which the District Court had exclusive jurisdiction. *Id.* at 73. The crucial teaching that we glean from that holding is: what is the gravamen of the claim? If the complaint raises an issue of taxation by a governmental body, then it should follow the administrative procedures laid out by the General Assembly and appeal to the District Court. Howev-

er, if the claim sounds in tort, or alleges one or more regulatory violations, a plaintiff may proceed in Superior Court if the claim satisfies the threshold jurisdictional amount.

The key factors that readily distinguish the current case from *Owner–Operators* are that the class action in *Owner–Operators* was against the tax administrator as a named defendant and that the remedy sought was tax abatement. *Owner–Operators,* 541 A.2d at 70. These facts make it abundantly clear that the gravamen of the complaint was a taxation aggrievement. Accordingly, we held that, in accordance with § 8–8–24 and § 8–8–3, the appropriate venue was the District Court. *Owner–Operators,* 541 A.2d at 73.

■ The case before us markedly differs from the issues raised in *Owner–Operators.* This is a negligence action coupled with a claim alleging deceptive trade practices. Here, the gravamen of plaintiffs' complaint is whether Dell (not the tax administrator) committed a deceptive trade practice by collecting taxes on the purchase of optional service contracts. The plaintiffs argue that these service contracts are not taxable in Rhode Island and that Dell, not the tax administrator, ignored the relevant statutes and regulations when it collected the tax. The fact that Dell may have paid over the money to the Division of Taxation does not change this result. The plaintiffs filed this claim in Superior Court in accordance with chapter 13.1 of title 6 of the DTPA. "The General Assembly, through the DTPA, has declared that '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are * * * unlawful.' Section 6–13.1–2. The DTPA provides a private right of action to recover actual and punitive damages and equitable relief for viola-

tions of its provisions. Section 6–13.1–5.2." *Chavers v. Fleet Bank (R.I.) N.A.,* 844 A.2d 666, 670 (R.I.2004). The DTPA is a remedial act and it should be liberally construed.

■ In *Chavers,* 844 A.2d at 670, we held that in cases in which the "complained of activity is subject to regulation by a government agency," private causes of action are precluded. "Specifically, the exemption contained in § 6–13.1–4 of the DTPA provides: 'Nothing in this chapter shall apply to actions or transactions permitted under laws administered by the department of business regulation or other regulatory body or officer acting under statutory authority of this state or the United States.'" *Chavers,* 844 A.2d at 670. We deem this holding distinguishable from the case before us because the DTPA does not exempt the fraudulent collection of taxes from its provisions. Further, it would lead to an absurd result if, as the case before us alleges, the collection of the tax is the deceptive trade practice and the DTPA was not available as a remedy. As we have suggested recently, "[t]his [C]ourt will not construe a statute to reach an absurd result." *Shepard v. Harleysville Worcester Ins. Co.,* 944 A.2d 167, 170 (R.I. 2008) (quoting *Kaya v. Partington,* 681 A.2d 256, 261 (R.I.1996)). It is clear from its language that nothing in the DTPA requires exhaustion of administrative remedies and we decline to hold otherwise.

Section 6–13.1–5.2(a) of the DTPA provides that:

"Any person * * * may bring an action under Rules of Civil Procedure in the *[S]uperior [C]ourt* of the county in which the seller or lessor resides, is found, has his or her principal place of business, or is doing business, or in the *[S]uperior [C]ourt* of the county as is otherwise provided by law, to recover actual damages or two hundred dollars ($200), whichever is greater. The court may, in its discretion, award punitive damages and may provide other equitable relief that it deems necessary or proper." (Emphases added.)

Accordingly, because the language of the statute is clear, we are of the opinion that the deceptive trade practice at issue in this case properly was brought in Superior Court, which was vested with subject-matter jurisdiction under the DTPA. Further, the Superior Court was correct in exercising ancillary jurisdiction over Ms. Ricci's negligence claim.

### Conclusion

■ In conclusion, we hold that the Superior Court was vested with subject-matter jurisdiction to hear this deceptive trade practice cause of action and has ancillary jurisdiction over the common-law negligence claim, notwithstanding the amount in controversy.[13] We pause to note, however, that although the defendant, tax administrator was not an original party, as an intervenor, should the Superior Court's decision on remand be adverse to the defendant tax administrator, he may appeal that ruling to this Court.[14]

13. The defendants expend great energy and urge us to pay attention to Ms. Ricci's failure to pay any use tax on her Dell products. Essentially, their point is that whatever Ms. Ricci or any plaintiff, may collect in damages will have to be remitted for failure to pay the use tax. Although that issue is not before us—it is, however, clear that anyone who joins this putative class action most likely will

be charged a tax since the Division of Taxation does not collect that tax in the first instance. In short, we note that the Taxman Cometh and that the representatives of the class, and their counsel, must apprise these parties of this eventually.

14. As we recently held in *Shepard v. Harleysville,* 944 A.2d 167, 170 (R.I.2008), our Court is "the final arbiter on questions of statutory

For the reasons stated, we quash the writ and affirm the judgment. The record may be remanded to the Superior Court with our decision endorsed in this opinion.

Chief Justice SUTTELL and Justice ROBINSON did not participate.

construction." Therefore, if the Superior Court were to make any determination on remand about the tax issues involved, any of the litigants can appeal to our Court.