December 18, 2019

**Supreme Court**

No. 2017-295-M.P.
(15-4163)

Corrine A. Lang as Executrix of the Estate    :
        of Kevin Lang

                    v.                         :

Municipal Employees' Retirement System    :
        of Rhode Island.

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

No. 2017-295-M.P.
(15-4163)
(Concurrence & Dissent begin on Page 17)
(Concurrence begins on Page 24)

Corrine A. Lang as Executrix of the Estate   :
      of Kevin Lang

              v.            :

Municipal Employees' Retirement System   :
      of Rhode Island.

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.** This Court issued a writ of certiorari to review a decision by the Appellate Division of the Workers' Compensation Court (WCC) upholding the award of accidental disability benefits for occupational cancer to the petitioner, Kevin Lang (Lang or petitioner).[1] The Appellate Division affirmed the trial judge's ruling that the WCC had subject-matter jurisdiction to hear the petitioner's claim and that G.L. 1956 § 45-19.1-1 created a conclusive presumption that cancer in firefighters arises out of and in the course of their employment as firefighters. The Municipal Employees' Retirement System of Rhode Island (respondent) seeks reversal of the final decree entered by the WCC, contending that the WCC did not have subject-matter jurisdiction to hear the petitioner's claim and that chapter 19.1 of title 45 of the general laws does not contain such a conclusive presumption. For the reasons set forth in this opinion, we affirm in part and quash in part the final decree of the WCC.

---

[1] The record reflects that Kevin Lang passed away in June 2017. On December 3, 2018, this Court ordered that Corrine A. Lang, as Executrix of the Estate of Kevin Lang, be substituted as petitioner.

# I

## Facts and Procedural History

The pertinent facts in this case are not in dispute. Lang served as a firefighter for the City of Cranston from 1996 until September 2012, when his career was abruptly cut short after he was diagnosed with colon cancer. The city placed Lang on injured-on-duty status, pursuant to G.L. 1956 § 45-19-1, and he began receiving salary benefits while incapacitated from work. In January 2014, he applied for accidental disability benefits under G.L. 1956 § 45-21.2-9, based upon his cancer diagnosis. In July 2015, the Retirement Board of the Municipal Employees' Retirement System of Rhode Island (the board) found that he did not prove that his cancer arose out of and in the course of his employment as a firefighter, and it therefore denied his application. The board notified him of his right to appeal its decision to the Superior Court; however, he appealed the decision to the WCC. He alleged that § 45-21.2-9(f) provided the WCC with subject-matter jurisdiction to hear his appeal.

The respondent filed a motion to dismiss the appeal in the WCC for lack of subject-matter jurisdiction, arguing that petitioner's appeal belonged in the Superior Court, pursuant to G.L. 1956 § 42-35-15 of the Administrative Procedures Act. The trial judge denied respondent's motion to dismiss and certified a question of law to this Court regarding the interpretation of §§ 45-21.2-9 and 45-19.1-1. After careful consideration, this Court declined to answer the question. The petitioner then filed a motion for summary judgment in the WCC, arguing that, pursuant to chapter 19.1 of title 45, all cancers contracted by firefighters are presumed to be work-related. The trial judge agreed with petitioner but found that factual issues remained.

The petitioner submitted three affidavits: one from Lang; one from Raymond Chaquette, M.D., Lang's oncologist; and one from William McKenna, the chief of the Cranston Fire Department. The affidavits established that Lang had been employed as a firefighter since 1996, was diagnosed with colon cancer in September 2012, and was immediately placed on injured-on-duty status because he was unable to work as a firefighter. Lang also submitted the record of proceedings before the board, along with its decision. Included in the record of proceedings were the reports from five physicians, including Dr. Chaquette. Although all five physicians agreed that Lang was permanently disabled, none could state that Lang's colon cancer resulted from exposures that occurred while he was employed as a firefighter.

The trial judge issued a written decision in which she reversed the board, finding that § 45-19.1-1(b) creates a conclusive presumption that all cancer in firefighters under § 45-19.1-1(a) arises out of and in the course of their employment; she therefore granted Lang accidental disability retirement benefits based upon his claim of occupational cancer. The respondent appealed to the Appellate Division, which, in a written decision, denied and dismissed the appeal and affirmed the decision and decree of the trial judge. A final decree was entered that affirmed the findings of fact and orders contained in the decree entered by the trial judge. The respondent filed a timely petition for writ of certiorari, which this Court granted.

## II

### Standard of Review

"Our review of a case on certiorari is limited to an examination of the record to determine if an error of law has been committed." *Plante v. Stack*, 109 A.3d 846, 853 (R.I. 2015) (quoting *State v. Poulin*, 66 A.3d 419, 423 (R.I. 2013)). "In addition to examining the record for judicial

- 3 -

error, we inspect the record to discern if there is any legally competent evidence to support the findings of the hearing justice below." *Id.* (quoting *Poulin*, 66 A.3d at 423).

"To decide this [case], we must construe several statutory provisions." *Rose v. State*, 92 A.3d 903, 906 (R.I. 2014). "We review questions of statutory interpretation *de novo*." *Bluedog Capital Partners, LLC v. Murphy*, 206 A.3d 694, 699 (R.I. 2019) (quoting *State v. Hazard*, 68 A.3d 479, 485 (R.I. 2013)). "In so doing, 'our ultimate goal is to give effect to the purpose of the act as intended by the Legislature.'" *Id.* (quoting *Hazard*, 68 A.3d at 485). "When the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *In re B.H.*, 194 A.3d 260, 264 (R.I. 2018) (brackets omitted) (quoting *State v. Santos*, 870 A.2d 1029, 1032 (R.I. 2005)). "If, however, the language of a statute is ambiguous, this Court turns to 'our well-established maxims of statutory construction in an effort to glean the intent of the Legislature.'" *Id.* (quoting *Town of Warren v. Bristol Warren Regional School District*, 159 A.3d 1029, 1039 (R.I. 2017)). "The Legislature is presumed to have intended each word or provision of a statute to express a significant meaning, and the Court will give effect to every word, clause, or sentence, whenever possible." *Id.* (brackets omitted) (quoting *State v. Clark*, 974 A.2d 558, 571 (R.I. 2009)). "As we have held, 'this Court will not construe a statute to reach an absurd result.'" *Id.* (brackets omitted) (quoting *Long v. Dell, Inc.*, 984 A.2d 1074, 1081 (R.I. 2009)).

### III

### Discussion

Because this Court is tasked with determining the interplay between several statutory provisions to resolve this case, we provide a brief review of those statutes. Generally, § 45-19-1 grants salary benefits to firefighters who have been injured on duty. In 2011, the General

Assembly amended § 45-19-1 to add subsection (j), which provides that any person receiving such benefits shall apply for an accidental disability retirement allowance within eighteen months of their injury, or they risk losing their injured-on-duty benefits. Subsection (2) of § 45-19-1(j) provides that a person who has applied to receive an accidental disability retirement allowance will continue to receive injured-on-duty payments, but the right to those payments "shall terminate in the event of a final ruling of the *workers compensation court* allowing accidental disability benefits." (Emphasis added.) Pertinent to this case, § 45-21.2-9, entitled "Retirement for accidental disability," provides accidental disability retirement allowance benefits to firefighters who are rendered physically or mentally incapacitated as a result of injury while in the line of duty. Also in 2011, the General Assembly amended § 45-21.2-9 to add, *inter alia*, subsection (f), which provides that "[i]n the event that any party is aggrieved by the determination of the retirement board *pursuant to* § 45-19-1, for an injury or illness occurring on or after July 1, 2011, the party may submit an appeal to the Rhode Island workers' compensation court."[2] (Emphasis added.) Finally, chapter 19.1 of title 45, entitled "Cancer Benefits for Fire Fighters," provides certain benefits to firefighters who have been diagnosed with a "disabling occupational cancer[.]" Section 45-19.1-3(a).

## A

### Subject-Matter Jurisdiction

The respondent raises three arguments in support of its contention that the WCC lacked subject-matter jurisdiction to hear petitioner's appeal. We address each in turn. "We have previously held that a challenge to subject-matter jurisdiction questions the very power of the

---

[2] In 2017, the General Assembly added "or illness" after the word "injury" in subsection (f) of G.L. 1956 § 45-21.2-9. P.L. 2017, ch. 288, § 1. This addition does not affect the outcome of this case.

court to hear the case." *Sullivan v. Coventry Municipal Employees' Retirement Plan*, 203 A.3d 483, 487 (R.I. 2019) (quoting *Retirement Board of Employees' Retirement System of City of Providence v. Corrente*, 111 A.3d 301, 305 (R.I. 2015)). "Subject-matter jurisdiction may not be waived by any party and may be raised at any time in the proceedings." *Id.* (quoting *Corrente*, 111 A.3d at 305). "We review *de novo* whether a court has subject-matter jurisdiction over a particular controversy." *Id.* (quoting *Corrente*, 111 A.3d at 305).

**1**

First, respondent asserts that the Appellate Division of the WCC erred when it affirmed the trial judge's determination that the WCC had subject-matter jurisdiction over petitioner's appeal from the board's decision. According to respondent, the plain and unambiguous language in § 45-21.2-9 vests the WCC with authority to hear appeals from the board only when the board has rendered a determination pursuant to § 45-19-1.

The respondent avers that § 45-21.2-9(f) should be read in isolation, and parses out the language in that section to conclude that the unambiguous language provides that an aggrieved party can appeal to the WCC only when the board has rendered its decision "pursuant to § 45-19-1[.]" The respondent claims that, because the board rendered the decision on petitioner's claim pursuant to § 45-21.2-9, the WCC lacked jurisdiction to hear petitioner's appeal.

This Court has noted, however, that "the plain meaning approach must not be confused with 'myopic literalism'; even when confronted with a clear and unambiguous statutory provision, it is entirely proper for us to look to the sense and meaning fairly deducible from the context." *O'Connell v. Walmsley*, 156 A.3d 422, 426 (R.I. 2017) (quoting *Raiche v. Scott*, 101 A.3d 1244, 1248 (R.I. 2014)). Additionally, "in so doing we must not construe a statute in a way

that would result in absurdities or would defeat the underlying purpose of the enactment." *Id.* at 428 (deletion omitted) (quoting *Commercial Union Insurance Co. v. Pelchat*, 727 A.2d 676, 681 (R.I. 1999)).

To adopt respondent's approach would render § 45-21.2-9(f) a nullity and would lead to an absurd result: The board, as respondent points out, would not have the ability to render decisions pursuant to § 45-19-1. The respondent's interpretation would mean the General Assembly created an appeal to the WCC that would have no effect and would give the WCC no new jurisdiction whatsoever, because the board will never render a decision pursuant to § 45-19-1. While we recognize that a strict reading of § 45-19-1 may suggest that the WCC lacks jurisdiction, we decline to interpret it as such, because it would "lead to a construction inconsistent with the manifest intent of the General Assembly[.]" *O'Connell*, 156 A.3d at 428 (brackets omitted).

Sections 45-19-1 and 45-21.2-9(f), when read in conjunction, demonstrate the General Assembly's intent to cloak the WCC with jurisdiction over appeals by aggrieved parties who have applied for an accidental disability retirement allowance pursuant to the time mandate contained in § 45-19-1(j) and were denied by the board. A reading of § 45-19-1(j) reveals that the statute clearly directs a person collecting injured-on-duty benefits to "apply for an accidental disability retirement allowance from the state retirement board" as a claim under § 45-21.2-9. Once the claim has been heard and the board has rendered a decision, an aggrieved applicant can then appeal to the WCC pursuant to § 45-21.2-9(f). Section 45-19-1(j)(2) further illustrates the General Assembly's intent that the WCC have jurisdiction over such appeals. That section provides that the applicant will continue to receive injured-on-duty benefits, but such benefits

- 7 -

"shall terminate in the event of a final ruling of *the workers compensation court* allowing accidental disability benefits." Section 45-19-1(j)(2) (emphasis added).

We find further support for this statutory interpretation in G.L. 1956 § 28-30-1(a) of the Workers' Compensation Act (the act), which grants the WCC "jurisdiction that may be necessary to carry out its duties under * * * the provisions of the Rhode Island general law § 45-21.2-9[.]" For the General Assembly to grant the WCC the jurisdiction necessary to carry out its duties under § 45-21.2-9, and for this Court to interpret § 45-21.2-9(f) as providing the WCC with no new jurisdiction under that section, would disregard all sense of legislative intent and would defeat the underlying purpose of the act. *See O'Connell*, 156 A.3d at 426. Therefore, we conclude that the General Assembly intended the WCC to have jurisdiction over appeals from adverse decisions rendered by the retirement board when the application was filed pursuant to the time mandate contained in § 45-19-1(j).

**2**

Second, respondent contends that the WCC lacked jurisdiction over petitioner's appeal because, respondent argues, *occupational cancer* and *injury* are two separate reasons for obtaining an accidental disability retirement allowance, and occupational cancer is not an injury within the meaning of § 45-21.2-9. Specifically, respondent argues that § 45-21.2-9(a) provides for accidental disability retirement allowance on the basis of injury or illness, while § 45-21.2-9(e) provides for accidental disability retirement allowance for occupational cancer. The respondent reasons that, if the General Assembly intended to include occupational cancer in § 45-21.2-9(f), it would have expressly done so. We disagree.

Again, we decline to read the provisions of the statute in such a rigid and technical manner, but instead make every effort to harmonize them. *See O'Connell*, 156 A.3d at 428.

- 8 -

First, as respondent correctly points out, under § 45-21.2-9(a), an applicant is entitled to an accidental disability allowance for an injury or illness sustained while in the line of duty; however, § 45-21.2-9(e) provides for an accidental disability retirement allowance based upon occupational cancer while in service or after retirement.  Section 45-21.2-9(e) also provides that an applicant is entitled to "*all of the benefits provided for in this chapter*[.]" (Emphasis added.)

Further supporting our interpretation is the fact that the act, at G.L. 1956 § 28-35-11, entitled "Questions determined by court," provides that "[a]ll questions arising under * * * Rhode Island general law § 45-21.2-9 shall, *except as otherwise provided*, be determined by the workers' compensation court[.]" (Emphasis added.)  Clearly, the General Assembly intended to provide the WCC with jurisdiction over all appeals arising under § 45-21.2-9, unless the General Assembly explicitly provided otherwise.  Section 45-21.2-9(f) contains no language explicitly indicating that appeals based on occupational cancer are to be treated differently.  The General Assembly had the opportunity to include such language so as to specifically provide that accidental disability retirement applications based on occupational cancer could not be appealed to the WCC; indeed, § 45-21.2-9(e) was enacted in 1991,[3] while § 45-21.2-9(f) was enacted twenty years later, in 2011.[4]  However, it chose not to do so. *See Horn v. Southern Union Co.*, 927 A.2d 292, 296 (R.I. 2007) ("[I]t is presumed that the General Assembly, when enacting a statute, is aware of earlier legislation.").

Accordingly, we conclude that the General Assembly intended to include occupational cancer as an injury in the WCC appeal provision provided for in § 45-21.2-9(f).

---

[3] P.L. 1991, ch. 255, § 1.
[4] P.L. 2011, ch. 151, art. 12, § 8.

**3**

Third, respondent argues that the WCC erred when it identified cancer as an occupational disease under the act and concluded that the date of diagnosis of the cancer is the date of injury for the purpose of determining the ability of a cancer applicant to appeal to the WCC. The respondent contends that § 45-21.2-9(j) only grants the WCC with authority to use its case-management procedures and dispute-resolution processes, but not its substantive law, in determining an appeal under that section. Once again, however, we decline to read the statute in such a rigid and hyper-technical manner, but we shall instead attempt to glean the General Assembly's intent. *See In re B.H.*, 194 A.3d at 264; *O'Connell*, 156 A.3d at 428.

Section 45-21.2-9(j) requires that "[a]ll proceedings filed with the workers' compensation court pursuant to this section shall be de novo and shall be subject to the provisions of chapters 29–38 of title 28 for all case management procedures and dispute resolution processes, as provided under the rules of workers' compensation court." The language of § 45-21.2-9(j) clearly states that all proceedings are subject to chapters 29–38 of title 28, and the statute contains no limiting language. Had the General Assembly intended to limit the authority of the WCC to procedural issues only, it could have provided in that statute that proceedings filed in the WCC pursuant to § 45-21.2-9(j) were subject only to the provisions of chapter 35 of title 28, which specifically deals with court procedures; however, the General Assembly did not do so. We conclude that the General Assembly intended that appeals filed with the WCC pursuant to § 45-21.2-9(j) are subject to all of the provisions in chapters 29 through 38 of title 28, and are not limited to case-management procedures only. This leads to the firm conclusion that the WCC properly ensured its jurisdiction by looking to the act, specifically G.L. 1956 § 28-34-2(33) to

determine that occupational cancer is a compensable injury, and § 28-34-6 to determine the date of disability.[5]

**B**

**Conclusive Presumption**

The respondent also contends that the WCC erred when it determined that § 45-19.1-1 creates a conclusive presumption that any diagnosis of cancer among firefighters is an "occupational cancer" entitling them to an accidental disability retirement allowance, without the need to prove that the cancer resulted from employment as a firefighter. The respondent claims that the statute does not expressly contain a conclusive or rebuttable presumption and that the General Assembly has not intended such a presumption because (1) the General Assembly has expressly created conclusive presumptions in other statutes; (2) the statutory definition of "occupational cancer" would be rendered meaningless; and (3) the General Assembly has created presumptions for health impairment of firefighters due to smoke inhalation and delegated that duty to municipalities. Finally, respondent asserts that any reliance on this Court's holding in *City of East Providence v. International Association of Firefighters Local 850*, 982 A.2d 1281 (R.I. 2009) (*IAF Local 850*), is misplaced.

At the outset, we note that both the trial judge and the Appellate Division of the WCC relied on this Court's holding in *IAF Local 850* in determining that § 45-19.1-1 creates a conclusive presumption that any cancer in firefighters is occupational cancer; however, such reliance is misplaced. Although we did refer to chapter 19.1 of title 45 in *IAF Local 850*, we did

---

[5] General Laws 1956 § 28-34-2 provides: "The disablement of any employee resulting from an occupational disease or condition described in the following schedule shall be treated as the happening of a personal injury[:] * * * (33) Disability arising from any cause connected with or arising from the peculiar characteristics of the employment." Section 28-34-6 provides: "For the purpose of this chapter the date of disablement for an occupational disease shall be the date of partial or total incapacity to work as a result of the disease."

not do so directly, as that case came before us on review of an arbitrator's decision. *IAF Local 850*, 982 A.2d at 1283. As we stated in *IAF Local 850*, our review of an arbitrator's decision is "limited in nature[,]" and highly deferential to the arbitrator's findings and legal reasoning. *Id.* at 1285. The arbitrator is tasked with interpreting relevant state law and the "arbitrator's award will be upheld even if he or she makes a mistake or error in interpreting the law." *Id.* As such, we addressed chapter 19.1, but only with regard to whether the arbitrator manifestly disregarded the law, which "occurs when an arbitrator understands and correctly articulates the law, but then proceeds to disregard it." *Id.* at 1286.

In *IAF Local 850*, the arbitrator determined that the parties had intended to incorporate § 45-19-1 into their collective-bargaining agreement and that chapter 19.1 of title 45 amended § 45-19-1 to include cancer as an occupational injury for Rhode Island firefighters. *IAF Local 850*, 982 A.2d at 1284. Based on this interpretation, the arbitrator concluded that the city was obligated to provide injured-on-duty benefits to a firefighter who had been diagnosed with cancer. *Id.* On appeal, the city contended that the language in chapter 19.1 limited its application to municipalities that participated in the optional retirement plan for police officers and firefighters and that, because the city did not participate in that plan, it was not subject to chapter 19.1. *Id.* at 1285. Looking at chapter 19.1 through that lens, we stated that the General Assembly clearly intended to ensure that cancer was a basis upon which one could receive injured-on-duty benefits and that the statutory language did not limit application of that benefit to municipalities. *Id.* at 1288. We held that the arbitrator did not exceed his authority in finding that the city was obligated to provide injured-on-duty benefits to a firefighter diagnosed with cancer, based on his interpretation of chapter 19.1. *Id.* at 1289.

Our task in *IAF Local 850* was not to provide our interpretation of chapter 19.1 of title 45, but rather to determine whether the arbitrator exceeded his authority by rendering an irrational decision; therefore, our holding did not determine what type of cancer a firefighter must prove to obtain occupational cancer disability benefits or that all cancers are occupational cancers. *IAF Local 850*, 982 A.2d at 1285. Rather, that case involved a straightforward application of the limited review of an arbitrator's decision, holding that the arbitrator had applied the law as he interpreted it. *Id.* at 1286, 1289. In the present case, however, we address the interpretation of chapter 19.1 on *de novo* review.

Turning to the statute in question, chapter 19.1 of title 45 is composed of three sections. Section 45-19.1-1 is entitled "Legislative findings" and declares in subsection (a) that, by reason of their employment:

> "(1) Fire fighters are required to work in the midst of, and are subject to, smoke, fumes, or carcinogenic, poisonous, toxic, or chemical substances;
> "(2) Fire fighters are continually exposed to a vast and expanding field of hazardous substances through hazardous waste sites and the transportation of those substances;
> "(3) Fire fighters are constantly entering uncontrolled environments to save lives and reduce property damage and are frequently not aware of potential toxic and carcinogenic substances that they may be exposed to;
> "(4) Fire fighters, unlike other workers, are often exposed simultaneously to multiple carcinogens, and the rise in occupational cancer among fire fighters can be related to the rapid proliferations of thousands of toxic substances in our every day environment; and
> "(5) The onset of cancers in fire fighters can develop very slowly, usually manifesting themselves from five (5) years to forty (40) years after exposure to the cancer-causing agent."

Section 45-19.1-1(b) provides: "The [G]eneral [A]ssembly further finds and declares that all of the previously stated conditions exist and arise out of or in the course of that employment." Section 45-19.1-2 is entitled "Definitions" and defines the operative terms in the statute,

including "occupational cancer[,]" which is defined as "a cancer arising out of his or her employment as a fire fighter, due to injury from exposures to smoke, fumes, or carcinogenic, poisonous, toxic, or chemical substances while in the performance of active duty in the fire department." Section 45-19.1-2(d). Finally, § 45-19.1-3 is entitled "Occupational cancer disability for fire fighters" and provides the statutory right that a firefighter who develops occupational cancer is entitled to receive an occupational cancer disability.

Chapter 19.1 of title 45 is not the epitome of legislative clarity; therefore, we "turn[] to 'our well-established maxims of statutory construction in an effort to glean the intent of the Legislature.'" *In re B.H.*, 194 A.3d at 264 (quoting *Town of Warren*, 159 A.3d at 1039). In doing so, we keep in mind that "[t]he Legislature is presumed to have intended each word or provision of a statute to express a significant meaning, and the Court will give effect to every word, clause, or sentence, whenever possible." *Id.* (brackets omitted) (quoting *Clark*, 974 A.2d at 571).

As a threshold matter, there is no express language in chapter 19.1 of title 45 that grants a conclusive or a rebuttable presumption that any diagnosis of cancer among firefighters is an occupational cancer. To the contrary, we conclude that the General Assembly intended that an occupational cancer be proven before a firefighter is entitled to receive occupational cancer disability benefits. The General Assembly defines "occupational cancer" in § 45-19.1-2(d) and provides in § 45-19.1-3 that a firefighter must be "unable to perform his or her duties" because of that occupational cancer before being entitled receive an occupational cancer disability benefit. To make that showing, a firefighter must prove a causal connection between the disease and his or her employment as a firefighter; that is, that he or she has been diagnosed with "*a cancer arising out of* his or her employment as a fire fighter, due to injury from exposures to smoke,

- 14 -

fumes, or carcinogenic, poisonous, toxic, or chemical substances while in the performance of active duty in the fire department." Section 45-19.1-2(d) (emphasis added). The General Assembly could have determined that all or any cancers in firefighters are occupational; however, it specifically defined "occupational cancer" and required that *a* cancer be proven that arose out of *his or her* employment due to injury from certain exposures while in the performance of active duty as a firefighter before being entitled to an occupational cancer disability benefit. To hold that chapter 19.1 includes a conclusive presumption, or any presumption, would render the specific definition that the General Assembly gave to the term "occupational cancer" meaningless, as would the requirement that a firefighter be unable to perform his or her duties while in the service of the fire department because of that occupational cancer.

Additionally, we conclude that the legislative findings contained in § 45-19.1-1 do not establish a conclusive presumption that every firefighter's cancer is due to injury from exposures while in the performance of his or her duties. The legislative findings in § 45-19.1-1(a) are general statements regarding the harsh conditions that firefighters can face or often face. Specifically, § 45-19.1-1(a)(4) states that firefighters "are *often* exposed" to carcinogens and that the rise in occupational cancer "*can* be related" to toxic substances being in the environment, while § 45-19.1-1(a)(5) adds that cancer among firefighters "*can* develop very slowly[.]" (Emphasis added.) This is followed by the further declaration in § 45-19.1-1(b) of the General Assembly's findings that those "conditions exist and arise out of or in the course of that employment." Significantly, however, § 45-19.1-1(b) does not declare that each and every individual firefighter has necessarily faced those harsh conditions and been harmed by them, or that every cancer in a firefighter is "*a* cancer arising out of his or her employment as a fire

fighter, due to injury from exposures * * * while in the performance of active duty in the fire department." Section 45-19.1-2(d) (emphasis added).

We believe that the general findings contained in § 45-19.1-1 are akin to broad-brush policy observations that provide the backdrop for the remedy that § 45-19.1-3 offers when a firefighter can prove that *he or she specifically* has suffered from the general conditions listed in § 45-19.1-1 and has been diagnosed with occupational cancer, as defined in § 45-19.1-2(d), as a result. While such policy language can be helpful to clarify other substantive provisions, it is "prefatory in nature and does not create any substantive private right." *Heritage Healthcare Services, Inc. v. Marques*, 14 A.3d 932, 938 (R.I. 2011); *see Grasso Service Center, Inc. v. Sepe*, 962 A.2d 1283, 1288-89 (R.I. 2009) ("Although 'preambles may be used to clarify ambiguities, they do not create rights that are not found within the statute.'") (brackets and deletion omitted) (quoting 73 Am. Jur. 2d *Statutes* § 110 at 320 (2001)).

To conclude that the language in § 45-19.1-1 creates a conclusive presumption would not only render the statutory definition of occupational cancer in § 45-19.1-2(d) meaningless and create a right not found within the statute, but would also construe the statute to reach an absurd result. For example, a conclusive presumption that all cancers in firefighters are occupational cancers would mean that a firefighter who smoked four packs of cigarettes a day for decades would receive an occupational cancer disability benefit despite not having proved that his cancer was related to exposure on the job. Similarly, a conclusive presumption would provide occupational cancer benefits to a firefighter who contracted cancer as a result of exposure to pesticides while landscaping in his or her yard. We do not believe the General Assembly would have extended such broad benefits to all firefighters without expressly providing for such in clear and unambiguous language.

- 16 -

An example of such express, clear language is found in § 45-19-16, which provides that municipalities have the option to enact a rebuttable presumption by ordinance that all conditions of health impairment caused by smoke inhalation of the lungs or respiratory tract suffered by firefighters are suffered in the line of duty, unless competent evidence is shown to the contrary. Given that the General Assembly expressly provided for a rebuttable presumption in such similar circumstances in that statute, we do not believe that the General Assembly would have neglected to include such express language in chapter 19.1 of title 45, especially if the General Assembly indeed intended to create such a conclusive presumption.

Accordingly, we hold that chapter 19.1 of title 45 does not contain a conclusive, or for that matter any, presumption that all cancers in firefighters are occupational cancers. Therefore, that portion of the decree on review that concludes as much is quashed.

## IV

### Conclusion

For these reasons, the decree on review is affirmed in regard to the finding that the WCC had jurisdiction to hear the petitioner's appeal, but is quashed in regard to the finding that chapter 19.1 of title 45 contains a conclusive presumption that all cancer in firefighters is occupational cancer. The papers in this case may be returned to the Workers' Compensation Court with our decision endorsed thereon.

**Justice Flaherty, concurring in part and dissenting in part.** I am in complete agreement with my colleagues that the Workers' Compensation Court is vested with jurisdiction to hear this appeal from the Municipal Employees' Retirement System. I therefore unequivocally join in that part of the majority's opinion. I must, however, most respectfully

depart from the majority's opinion that the statutory framework does not provide that a diagnosis of cancer entitles a firefighter to an accidental disability pension.

This case is about a firefighter, Kevin Lang, who served the City of Cranston for an excess of twenty years, succumbed to colon cancer in 2017, and, despite the General Assembly's explicit and unreserved legislative findings that a firefighter's cancer arises as the result of his service to his municipality, is today denied the full benefits that the Legislature provided for firefighters who are diagnosed with cancer.[1]  I dissent because the General Assembly determined as a matter of declarative fact that cancer in firefighters is caused by their dangerous working conditions and because I cannot fathom how the statute at issue can be read in any other way.

Central to the parties' dispute is chapter 19.1 of title 45 of our general laws, entitled Cancer Benefits for Fire Fighters, and how it interacts with G.L. 1956 § 45-21.2-9, relating to accidental disability pensions.  Under the provisions of § 45-21.2-9, a firefighter may seek "an accidental disability retirement allowance" when the firefighter is the victim of an "occupational cancer[.]" Section 45-21.2-9(e).  As § 45-21.2-9(c) dictates, an occupational cancer is "a cancer arising out of employment as a fire fighter[.]" *Id.*  At issue is: What evidence was Mr. Lang required to produce to demonstrate that he was the victim of an occupational cancer and that that malady arose as a result of his employment?  The majority today essentially holds that Mr. Lang must bring forth expert testimony to definitively prove that his work as a firefighter led to his cancer diagnosis.  I disagree because it is my opinion that the General Assembly already has provided that link in § 45-19.1-1(a) of the Cancer Benefits for Fire Fighters statute.

---

[1] The majority says that Mr. Lang served from 1996 until 2012.  However, it was in 2012 when Mr. Lang was put on injured-on-duty status.  Mr. Lang remained a member in active service until his death.  I thus characterize his time of service as exceeding twenty years.

In my opinion, § 45-19.1-1 is clear and unambiguous. That enactment enumerates certain legislative findings, including that firefighters are exposed to "smoke, fumes, or carcinogenic, poisonous, toxic, or chemical substances[.]" Section 45-19.1-1(a)(1). Indeed, the General Assembly declared that firefighters "are often exposed simultaneously to multiple carcinogens" and that there had been a rise in cancer diagnoses among firefighters because of the proliferation of toxic substances in the environment. Section 45-19.1-1(a)(4). Finally, the General Assembly declared that the effects of that exposure may take decades to develop, articulating that "[t]he onset of cancers in fire fighters can develop very slowly, usually manifesting themselves from five (5) years to forty (40) years after exposure to the cancer-causing agent." Section 45-19.1-1(a)(5).

Most importantly, to follow those very strong and unequivocal findings, the Legislature then said in subsection (b) of the very same statute: "The [G]eneral [A]ssembly further finds and declares that all of the previously stated conditions exist and arise out of or in the course of that employment." Section 45-19.1-1(b). Because "cancer" is a "previously stated condition," a clearer and more direct statement confirming the link of firefighting and cancer could not be made.

Much of the argument in this case has centered on whether the law established a "conclusive presumption" that cancer in firefighters arises out of their employment. In my view, those arguments are wide of the mark. As described above, the language employed by the General Assembly exceeds presumption. Rather, that language establishes the connection between a cancer diagnosis and employment as a firefighter by declarative fact. Consequently, all Mr. Lang should have been required to prove to receive an accidental disability retirement is that he developed cancer and that he was a firefighter. There is no further need to establish the

- 19 -

connection between the cancer and his lifesaving work because the General Assembly, cognizant of the difficulties of establishing a link between the ever-present conditions that produce a disease that may take decades to become symptomatic, already did it for him. This is sensible because, as the General Assembly said, "cancers in fire fighters can develop *very* slowly" and may manifest only after forty years from exposure "to the cancer-causing agent." Section 45-19.1-1(a)(5) (emphasis added). Further, a cancer-stricken firefighter would find it difficult, if not impossible, to recollect which of many fires or other on-the-job responses resulted in his exposure to a particular toxin. It is obvious that a doctor would be hard-pressed to link any individual's cancer to any specific event that may have occurred twenty years ago, especially considering all of the other exposures to carcinogens in a firefighter's everyday life. It is clear to me that the General Assembly, therefore, in recognition in § 45-19.1-1(a)(3) that "[f]ire fighters are constantly entering uncontrolled environments to save lives and reduce property damage[,]" enumerated in § 45-19.1-1(b) that cancer in those employed as firefighters "exist[s] and arise[s] out of or in the course of that employment."

What's more, although the majority does not articulate whether the statute is ambiguous or not, it nonetheless, in a lengthy analysis, characterized chapter 19.1 of title 45 as "not the epitome of legislative clarity." It then proceeds to construe the statute in an effort to discern legislative intent. However, it is axiomatic that this Court applies the rules of construction only to statutes that it deems to be ambiguous. As such, I can only conclude that the majority considers the statute to in fact be ambiguous. Indeed, it goes without saying that, if the majority had determined the law to be unambiguous, which is the conclusion that I have reached, it would simply have applied it as written, unless such an application would lead to an absurd result.

Even if I were to agree with the majority that the statute is ambiguous, and I do not, the result should be to affirm the Workers' Compensation Court. This is so because, without question, the statute is remedial in nature in that it creates new rights for firefighters who have been stricken with cancer and provides a remedy for them. *See Gem Plumbing & Heating Co., Inc. v. Rossi*, 867 A.2d 796, 811 (R.I. 2005) (explaining that a remedial statute is a statute "which affords a remedy, or improves or facilitates remedies already existing for the enforcement of rights or redress of wrongs") (quoting *Ayers-Schaffner v. Solomon*, 461 A.2d 396, 399 (R.I. 1983)). It seems to me that it is beyond argument that providing an accidental disability pension and any other relevant benefits to firefighters who develop cancer is the goal of the statute. Nonetheless, the majority has construed the statute narrowly, and not liberally, as our law consistently has required. *See Gem Plumbing & Heating*, 867 A.2d at 811 ("[W]here the statute is remedial * * * it is to be construed liberally." (quoting *Ayers-Schaffner*, 461 A.2d at 399)); *see also State v. Carter*, 827 A.2d 636, 643 (R.I. 2003) ("[T]o effectuate its salutary purpose a remedial statute should be liberally construed[.]" (quoting *State v. Simmons*, 114 R.I. 16, 18, 327 A.2d 843, 845 (1974))). It is also noteworthy that, in its construction of chapter 19.1 of title 45 and § 45-21.2-9, the majority has drawn a contrast between chapter 19.1 of title 45 and G.L. 1956 § 45-19-16, which provides as follows:

> "Notwithstanding the provisions of any general or special law or to any state or municipal retirement system, any city or town may, by ordinance, provide that every condition of impairment of health caused by smoke inhalation of the lungs or respiratory tract, resulting in total disability or death to a uniformed member of a paid fire department, is presumed to have been suffered in the line of duty as a result of the inhalation of noxious fumes or poisonous gases, unless the contrary is shown by competent evidence; provided, that the person benefiting by the presumption passes a physical examination upon entry into service or subsequent to entry an examination failed to reveal any evidence of the condition."

The majority seizes upon this statute as grist for its conclusion that the General Assembly is well aware of how to call for a conclusive presumption when it wishes to do so—and because it did not do that in chapter 19.1 of title 45, no such presumption exists. However, with all due respect, it is my opinion that a reliance on § 45-19-16 is flawed in a number of respects.

For one, § 45-19-16 is permissive in nature; it allows, but does not require, municipalities to enact an ordinance providing that an impairment of health due to lung damage is presumed to have been caused by employment as a firefighter. Moreover, and of far more importance, § 45-19-16 was enacted in 1963, at a time when there was a comparative dearth of scientific knowledge about the increase in danger from toxins and carcinogens in the environment.[2] By the time the General Assembly passed § 45-19.1-1 into law in 1987, scientific knowledge had expanded exponentially. For this reason, the General Assembly made legislative findings about the dangers of toxic and carcinogenic substances, particularly to firefighters, who are thrust into the middle of conflagrations saturated by cancer causing chemicals each and every day, and there were veritable mountains of information available that conclusively linked carcinogens and other toxins in the environment to lethal health conditions, especially in the case of firefighters.

Lastly, it is my opinion that, despite its valiant efforts to distance itself from the crystal-clear language employed by this Court in *City of East Providence v. International Association of Firefighters Local 850*, 982 A.2d 1281 (R.I. 2009), the majority falls far short of its goal to escape the grasp of the rationale of that case. Although it is true that that case involved an appeal

---

[2] By way of example, Congress did not require language warning that smoking cigarettes may be unhealthy until 1966, Federal Cigarette Labeling and Advertising Act, Pub. L. No. 89-92, 79 Stat. 282, and did not require language explicitly warning that smoking causes lung cancer be printed on cigarette packages until 1985. Comprehensive Smoking Education Act, Pub. L. No. 98-474, 98 Stat. 2200 (requiring one of four rotating messages to appear on cigarette packaging, one of which included an explicit lung cancer warning).

of an arbitrator's decision, which was thus subject to a far different standard of review, it is difficult to escape the definitive way in which this Court discussed the very Act in question.[3]

In clear and in no uncertain terms, and in a unanimous decision, this Court held that chapter 19.1 of title 45 was clear and unambiguous. The Court said that:

> "Upon a reading of the statute, it is evident that the General Assembly intended to ensure that firefighters diagnosed with cancer receive injured on-duty benefits in accordance with * * * § 45-19-1[.] The enactment of the 'Cancer Benefits for Fire Fighters' statute specifically designated cancer among firefighters as an on-duty illness, based on the General Assembly's findings that firefighters are exposed to 'a vast and expanding field of hazardous substances' and that the 'rise in occupational cancer among fire fighters can be related to the rapid proliferation of thousands of toxic substances.'" *City of East Providence*, 982 A.2d at 1288 (quoting § 45-19.1-1(a)(3)–(4)).

The Court then went on to say that, in view of its reading of the statute, the arbitrator did not exceed his authority, in that he had interpreted the law in the same way. *City of East Providence*, 982 A.2d at 1289. This is hardly mere dicta.

For the reasons set forth above, it is my opinion that the decree of the Workers' Compensation Court is correct and should be affirmed in its entirety. I therefore respectfully dissent from the holding of the majority as relates to the effect of chapter 19.1 of title 45.

---

[3] It is true that the issue in *City of East Providence v. International Association of Firefighters Local 850*, 982 A.2d 1281 (R.I. 2009), was whether the arbitrator exceeded his authority in his determination that the grievant-firefighter should have been placed on injured-on-duty status during the time he missed as a result of prostate cancer pursuant to G.L. 1956 § 45-19-1, rather than being placed on sick leave. *City of East Providence*, 982 A.2d at 1283. Thus, it was not a disability pension case. However, there is no question that, after being put on injured-on-duty status for a period of eighteen months, a firefighter "*shall*" apply for a disability pension. *See* § 45-19-1 (emphasis added); *see also* § 45-21.2-9(a). In this case, the City of Cranston already had placed Mr. Lang on injured-on-duty status in accordance with § 45-19-1, and he remained on that status until his death from cancer.

**Justice Robinson, concurring.** I am pleased to concur with the conclusion reached in the majority opinion and with its reading of the pertinent statutory provisions. Nonetheless, I write separately to respectfully reiterate my conviction that there are occasions when it is important for the General Assembly to speak with stark clarity when it wishes to enact into law a provision that represents a departure from the usual.

This is by no means a case where I could say that "the right answer" was instantly self-evident; instead, focused concentration on the actual statutory language was required. The dissent has set forth powerful arguments in support of its understanding of what the General Assembly intended, and I have carefully considered those arguments. In the end, however, I realized that I was required to look to what the statute actually says rather than to what may arguably have been the intent of the legislators. *See Martone v. Johnston School Committee*, 824 A.2d 426, 431 (R.I. 2003) ("The best evidence of [legislative] intent can be found in the plain language used in the statute."); *see also Mutual Development Corp. v. Ward Fisher & Co., LLP*, 47 A.3d 319, 328 (R.I. 2012) ("In reviewing the language of a statute, our ultimate goal is to give effect to the General Assembly's intent, and we have repeatedly observed that [the] plain statutory language is the best indicator of [such] intent.") (internal quotation marks omitted); *DeMarco v. Travelers Insurance Co.*, 26 A.3d 585, 616 (R.I. 2011). The plain blunt fact is that the General Assembly never used the word "presumption" (let alone "conclusive presumption") in this particular statute. The General Assembly could have mandated that there be a conclusive presumption with respect to the cause of cancer in firefighters, but there is simply no clear language in the statute indicating that

- 24 -

the General Assembly did so.  Where a provision as significant and as quite unusual[1] as the one presently in contention is concerned, it is especially important that the General Assembly be particularly clear as to its intent so that the judicial branch can properly fulfill its role of applying the statute to the case at hand.

---

[1]    The dissent reads the statute as clearly expressing the General Assembly's intent to mandate what would be in effect a conclusive presumption that cancer in firefighters is caused by the various toxins to which they may have been exposed in the course of carrying out their firefighting duties.  But conclusive presumptions are unusual in our jurisprudence.  *See Safari Club International v. Zinke*, 878 F.3d 316, 328 (D.C. Cir. 2017); *see also* 29 Am. Jur. 2d *Evidence* § 213 (Nov. 2019 Update).

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Corrine A. Lang as Executrix of the Estate of Kevin Lang v. Municipal Employees' Retirement System of Rhode Island. |
| **Case Number** | No. 2017-295-Appeal.<br>(15-4163) |
| **Date Opinion Filed** | December 18, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Appellate Division of the Worker's Compensation Court |
| **Judicial Officer From Lower Court** | Associate Judge Debra L. Olsson<br>Associate Judge Hugo L. Ricci<br>Associate Judge Robert E. Hardman |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>James E. Kelleher, Esq.<br><br>For Respondent:<br><br>Michael P. Robinson, Esq.<br>Christopher J. Fragomeni, Esq.<br>John H. McCann, Esq. |

SU-CMS-02A (revised June 2016)